## AUSTIN TERM, 1902.

### GUADALUPE GRIMSINGER v. THE STATE.

#### No. 2325.   Decided April 30, 1902.

#### Motion for Rehearing Overruled June 6, 1902.

**1.—Notice of Appeal.**

The record on appeal must show that notice of appeal was given and entered at the term of the court at which the conviction occurred, otherwise the appeal will be dismissed.

#### ON MOTION TO REINSTATE.

**2.—Same—Reinstatement of a Case Dismissed.**

Where a case on appeal has been dismissed, if the defects in the record which caused its dismissal are subsequently cured, it will, on motion, be reinstated upon the docket for trial.

**3.—Continuance.**

A second application for continuance was properly refused where it appeared that the proposed absent testimony was merely cumulative.

**4.—Confession Before the Grand Jury.**

The confession of defendant, made before the grand jury, after being warned in regard to the crime charged, is competent evidence against defendant.

**5.—Confession—Inducement.**

Where a confession is made after a legal warning, it will not be excluded because an inducement was held out to defendant after making such confession. Where the accused was taken before the grand jury at the instance of the district attorney, and, after being there properly warned as required by the statute, made a statement in which she showed her guilty participation in the crime, and some time thereafter a member of the grand jury said to her, "If you desire us to be light upon you, you had better tell the truth;" whereupon she expressed the hope that they would be light upon her; Held, an inducement, in order to render confession inadmissible, must precede or accompany the confession. Such inducement, if held out subsequent to a confession, will not operate to exclude a prior confession made after and under a legal warning.

**6.—Same.**

Hope of immunity alone, entertained without any inducement creating the same, is not sufficient. There must be an inducement, held out by a proper party, as the basis of that hope of immunity, in order to avoid the admissibility of the confession.

**7.—Same.**

Where it appeared that defendant had been arrested and taken before a justice of the peace, who told her it would be better for her to tell the truth and the whole truth, this statement of the justice would not justify the court in excluding her confession subsequently made before the grand jury after a legal warning.

Vol. 44 Crim. Rep.—1.

**8.—Same—Where Confession Has Been Reduced to Writing—Parol Evidence.**

The fact that a confession had been reduced to writing would not exclude oral testimony of its contents, nor other testimony given at the same time and under the same sanction.

**9.—Murder—Evidence.**

On a trial for the murder of her husband, it was competent to prove that three days after defendant's arrest, and while she was incarcerated in jail, the witness went to her house where the murder had been committed, and, unlocking a wardrobe, found therein an ax, with blood and hair on it, which was introduced in evidence. The fact that she had not been in possession of the house for several days, and that other parties may have had access to it, is an objection to the probative force and not to the admissibility of the evidence.

**10.—Murder in First Degree—Charge.**

On a trial for murder, where the court charged the jury, "When the evidence satisfies the jury beyond a reasonable doubt that the killing was the result of a previously formed design, by the person acting, to kill deceased, and that the design was formed when the mind was calm and sedate and capable of contemplating the consequences of the act proposed to be done by him; and such killing is further shown to have been unlawful and with malice, then the homicide is murder in the first degree;" Held, correct, when taken in connection with the whole charge, and that the use of the words "person acting" did not render the charge uncertain and misleading.

**11.—Murder—Principals.**

To render one a principal to a murder, his presence need not be strictly actual immediate presence such as would make him an eye or ear witness of what passes, but may be a constructive presence; and where it appeared, that defendant was at the woodshed watching, at the time the husband was killed in the house a few feet away, her juxtaposition clearly brought her, in legal contemplation, as a principal present at the homicide, she having agreed that the slayer should go and kill her husband in the house.

**12.—Same—Principals—Charge.**

A charge as to principals is correct which is a substantial copy of article 78, Penal Code, which reads, "Any person who advises or agrees to the commission of an offense and who is present when the same is committed, is a principal thereto whether he aids or not in the illegal act."

**13.—Accomplice—Accessories—Charge.**

A charge as to accomplices which is an exact copy in full of article 79, Penal Code, and which, as to accessories, is an exact copy of article 86, Penal Code, is correct, and it was not error to give such charges.

**14.—Murder—Principals—Charge.**

On a trial for murder, a charge was correct which instructed the jury, in effect, that if defendant, with express malice, advised the slayer to kill deceased, and was present at the killing, she would be guilty whether she aided or not in the illegal act; and that she would also be guilty if, under such circumstances, though not actually present, she was at the time keeping watch so as to prevent the interruption of the slayer in the commission of the act.

**15.—Confessions—Submission of Predicate for to Jury.**

Where it appeared that when the district attorney was laying the predicate for the introduction of defendant's statement before the grand jury, the jury were retired, at the instance of defendant's counsel, and the testimony having been heard, upon the recalling of the jury the district attorney offered anew the testimony as to the predicate, whereupon defendant's counsel objected to going over it again, and no testimony touching the predicate was introduced before the jury; Held, under the circumstances, the court did not err in failing to submit to the jury the question as to whether or not the confession had been freely and voluntarily made.

ON MOTION FOR REHEARING.

**16.—Bill of Exceptions—Qualification of by Judge.**

The qualification or explanation of the judge appended to a bill of exceptions will control the recitals in the bill so far as such explanation modifies such recitals; and where counsel accepts a bill with the qualification of the judge indorsed thereon, and files the same, he is estopped from claiming it to be other than as the qualification makes it.

**17.—Witness Introduced by Defendant.**

A defendant can not be heard to complain that a witness' testimony went to the jury which was at her own instance and over the State's objection.

**18.—Confession Before Grand Jury.**

It has been the uniform rule in this State (the question of inducement aside) to admit in evidence the confession of a defendant made before the grand jury, provided he has been given the statutory warning; and while evidence before the grand jury is not properly admissible for all purposes, nor in reference to all proceedings before the grand jury, it is competent when, in the judgment of the court, it is material to the due administration of justice.

**19.—Same—When Made Under Oath.**

A confession before the grand jury is not inadmissible as evidence because made under oath by a witness. It is expressly provided, that an accused shall not be sworn when making a voluntary statement before an examining court; but there is no such provision with reference to the grand jury.

**20.—Same.**

The fact that an attorney sought an interview with defendant of which she was not apprised before she made her confession, before the grand jury, and the fact that counsel was denied such an interview with defendant, is no reason why her confession before the grand jury should be excluded. Henderson, J., dissents.

Appeal from the District Court of Bexar. Tried below before Hon. John H. Clark.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

Appellant was charged by the indictment, in three counts, with the murder of John Grimsinger (her husband), on the 16th day of January, 1901, by striking him with an ax handle, with an ax, and with an instrument unknown to the grand jury.

This is a companion case to Juan Rocha v. State, 43 Texas Crim. Rep., 169. A full conception of the material facts attendant upon the homicide may be gained by a reference to that case in connection with the opinion in this case, and no additional statement is required.

*Newton & Ward* and *J. T. Newton,* for appellant, filed a most able brief of 136 pages, from which we make the following extracts pertinent to the questions discussed on this appeal:

The testimony of witness Fred W. Cook as to statements or confessions of this defendant made before the grand jury was inadmissible, because said purported statements or confessions were given before the grand jury then in session officially investigating the killing of John Grimsinger, and to thus divulge the said statements or confessions of this defendant was in violation of article 404 of the Code of Criminal Procedure and article 213 of the Penal Code, the truth or falsity of said confessions or statements not being under investigation on the trial of this cause. Appellant did not take the stand and testify in this case. Code Crim. Proc., art. 404; Penal Code, art. 213; Gutgesell v. State, 43 S. W. Rep., 1016; Hines v. State, 37 Texas Crim. Rep., 339; Christian v. State, 40 Texas Crim. Rep., 669; dissenting opinion of Judge Henderson in the case of Wisdom v. State, 61 S. W. Rep., 927; 17 Am. and Eng. Enc. of Law, 1294-5, and note 1 on p. 1295; Greenl. on Ev., 16 ed. by J. H. Wigmore, sec. 252.

"In some States statutes have been enacted prescribing the instances

in which grand jurors may testify as to what occurred before them, and it has been held that such statutes are exclusive and that grand jurors may testify in no other than the prescribed cases." 17 Am. and Eng. Enc. of Law, 2 ed., p. 1294.

In support of the text the following decisions are cited which absolutely and beyond a reasonable doubt uphold the doctrine there enunciated: People v. Thompson, 81 N. W. Rep., 344, quoting 9 Am. and Eng. Enc. of Law, 1 ed., 17, 18; People v. Lauder, 82 Mich., 132; Burdick v. Hunt, 43 Ind., 381; Burnham v. Hatfield, 5 Blackf. (Ind.), 21; Sands v. Robinson, 12 Smed. & M. (Miss.), 704; 51 Am. Dec., 132; Tindle v. Nichols, 20 Mo., 326; State v. Hamilton, 13 Nev., 386; Huidekoper v. Cotton, 3 Watts (Pa.), 56; Jones v. Turpin, 6 Heisk. (Tenn.), 181.

The said statements or confession of appellant were not admissible, because at the time the same were made she was then under arrest, and the same were not voluntarily or freely made, and the same were so made by her under and by reason of hopes and inducements made and held out to her by members of the grand jury and other officers of the law; and because appellant was not only under arrest at the time, but against her will she was brought before the grand jury and there compelled to be sworn as a witness, previous thereto not only having been denied the privilege of seeing her counsel, but by orders of the sheriff and district attorney had been placed incommunicado.

Carlos Bee, district attorney, testified: "When I came down town that morning I was informed of the killing of John Grimsinger and the sheriff was actively at work in ascertaining the matters connected with it, and about 10 o'clock in the morning, I think, officers Stevens and Green (if I am not mistaken; I will not be positive) came into my office with Mrs. Grimsinger. Stevens and Green introduced me to her and stated her husband had been killed the night before in about a block of the house, and they brought her to me to see if I wanted to talk to her about it. I then questioned her in reference to it as a witness in the case. She told me the story of the killing, which implicated Rocha alone, absolutely leaving her out of the question entirely. She made that statement quite fully, but there was some discrepancy, and after awhile Justice of the Peace Thad Adams came in, and in the course of the conversation with her my recollection is I was sitting at my desk and he (Adams) was at the window, and he said something to her about 'this is a peculiar sort of a case, and the best thing you can do is to tell the truth and the whole truth about it,' or 'it would be much better for you,' or something of that character, and she said, 'There is no reason why I should do anything else,' or something like that, and then Adams left. I do not remember when the officers left, but I know the officers went off to see if there was a man by the name of Rocha, and she stayed there for some time, and the sheriff returned and informed me that there was such a man as Rocha, and I thought the circumstances were sufficient to warrant the action,

and about 1:30 o'clock I told the defendant that she would have to be arrested in this matter. It was the first information that she had had at all that she was to be arrested, because she said, 'You are not going to arrest me, are you?' and I said, 'Yes, I expect, Mrs. Grimsinger, we will have to arrest you and put you in jail.' She said, 'Don't arrest me; don't put me in jail.' This was before she went before the grand jury. She was under arrest when she came before the grand jury. She had been placed in jail, the warrant made out through the justice court, and she was taken down to the justice court where the warrant of arrest was made out by Justice of the Peace Thad Adams. She was then turned over to the custody of the officer and carried to the Bexar County jail; and I then issued an order reconvening the grand jury to investigate the killing of John Grimsinger." White's Code Crim. Proc., arts. 404, 789, 790; Searcy v. State, 28 Texas Crim. App., 513; Walker v. State, 28 Texas Crim. App., 112; Thomas v. State, 19 Texas Crim. App., 593; Neely v. State, 27 Texas Crim. App., 324; McVeigh v. State, 62 S. W. Rep., 757; People v. Lauder (Sup. Ct. Mich.), 46 N. W. Rep., 958; State v. Broughton, 45 Am. Dec., 510.

The following English cases hold that if the confession is made under oath, that fact renders the confession inadmissible. Rex v. Lewis, 6 Carr. & P., 161; Rex v. Davis, 6 Carr. & P., 177; Owens' case, 9 Carr. & P., 238; Wheeler's case, 8 Carr. & P., 250.

The following American authorities are to the same effect: State v. Broughton, 45 Am. Dec., 510; People v. Lauder, 46 N. W., Rep., 958; People v. McMahon, 15 N. Y., 384; People v. Mondon, 103 N. Y., 217; People v. Wolcott, 51 Mich., 615; 1 Greenl. on Ev., 16 ed., sec. 225, by J. H. Wigmore; Roscoe's Crim. Ev., p. 55; Kelly v. State, 72 Ala., 244; Commonwealth v. Rockwell, 6 Pa. Dist. R., 768; Jackson v. State, 56 Miss., 311; State v. Clifford, 86 Iowa, 550; Bram v. United States, 168 U. S., 532-573; Bill of Rights, Constitution of Texas, sec. 10.

In the case of the State v. Broughton, 45 American Decisions, pages 510, 511, a case so much relied on by this court in the Wisdom case, it is said: "The counsel for the prisoner took the further ground here, that it was incompetent to prove the evidence of the prisoner because it was in the nature of a confession, which, compelled by an oath, was not voluntary. It is certainly no objection to the evidence merely that the statement of the prisoner was given by him, as a witness under oath. He might have refused to answer questions when he could not do so without criminating himself; and the very ground of that rule of law is, that his answers are deemed voluntary and may be used afterwards to criminate or charge him in another proceeding, and such is clearly the law. 2 Stark. Ev., 28; Regina v. Wheater, 2 Moo. Cr. Cas., 45. But it is true, that if a prisoner under examination as to his own guilt, be sworn, his statement is not evidence; because the statute (Revised Statutes, chapter 35, section 1, which is taken from that of Phillip & M.) intended to have the party free to admit or deny his guilt, and the oath deprives him of that freedom. 2 Hawk. Pl. C., 46, sec. 37; Bull,

N. P., 242. And we think it was also properly decided in Lewis' case, 6 Carrington & Payne, 161, where a magistrate was engaged in the investigation of a felony, and no one in particular was then charged with it, and the prisoner and other persons were summoned and sworn as a witness, and the prisoner gave evidence upon which he was committed for trial, that his examination was not admissible against him. For plainly it was a case within the reason of the statute; which could be completely evaded, if, instead of a direct examination of a suspected person, there could be a general inquisition, and every individual made to betray himself. For that reason the court would in this case, have held, that the evidence given by the prisoner could not have been used against him, if it purported to confess his guilt and the grand jury had founded a presentment on it; for the proceeding before the grand jury at the time was in its nature inquisitorial, and the witness was as much the object of it as any other person."

In People v. Lauder (Michigan), 46 Northwestern Reporter, 958, it is said: "The bringing of Lauder before the grand jury under such circumstances and subjecting him to an examination by the prosecutor, without counsel to aid him, and in ignorance of the objects of his examination, is characterized by his counsel as an unwarranted and inexcusable legal outrage. * * * The subpoenaing and examination of Lauder under the circumstances was unwarranted and an outrage. Prosecuting officers ought not to forget in the zeal of a commendable investigation of a supposed great public scandal and corruption, that accused persons are presumed to be innocent until proven guilty, and that there are no circumstances possible in a republican government that can take away from any citizen, in time of peace, the inalienable rights guaranteed to him by the fundamental law of both the State and Nation, and among which, no less than any other, is the right not to be compelled to be a witness against himself in any criminal case. And it must be remembered that a grand jury is not above the law, or the Federal and State Constitutions. The law that creates it governs it, and the Constitution prevails and must be obeyed, and can not be either violated or evaded on the ground of any supposed public necessity. The grand jury has always been considered in the law as a means of protection, and not as an oppression to the citizen. It was never intended to be used as an engine of personal or partisan malice, and can not lawfully be so used; neither can it, although inquisitorial in its procedure, deprive the citizen of any substantial right in which he is protected by the express mandate of the organic or statute law."

Again, we desire to emphasize the fact that in this case Lauder had never been arrested, and he was simply before the grand jury in obedience to a subpoena.

Perhaps the best considered case upon the subject of confessions to be found in the United States, is the case of Bram v. United States, 168 United States, 532 to 573. In that case it was said: "While the admissions or confessions of the prisoner, when voluntarily and freely made,

have always ranked high in the scale of incriminating evidence, if an accused person be asked to explain his apparent connection with a crime under investigation, the ease with which the questions put to him may assume an inquisitorial character, the temptation to press the witness unduly, to browbeat him if he be timid or reluctant, to push him into a corner and to entrap him into fatal contradictions, which is so painfully evident in many of the earlier State trials, notably in those of Sir Nicholas Throckmorton and Udal, the Puritan minister, made the system so odious as to give rise to a demand for its total abolition. The change in the English criminal procedure in that particular seems to be founded upon no statute and no judicial opinion, but upon a general and silent acquiescence of the courts in a popular demand. But, however adopted, it has become firmly imbedded in English as well as in American jurisprudence. So deeply did the iniquities of the ancient system impress themselves upon the minds of the American colonists that the States with one accord made a denial of the right to question an accused person a part of their fundamental law, so that a maxim, which in England was a mere rule of evidence, became clothed in this country with the impregnability of a constitutional enactment."

In Roscoe's Criminal Evidence, page 556, sixth American edition, it is said: "The examination of a prisoner must not be taken upon oath. If it be so it will not be receivable in evidence. This was frequently so held before 11 and 12 Victoria, chapter 42, was passed."

In section 690, page 606, volume 1, Wharton's Criminal Evidence, 7th edition, it is said: "But the examination of an accused party taken as such is not admissible when such accused party is put on his oath and sworn and examined. This rule is founded upon the unreliable as well as the inquisitorial character of such statements; and therefore, where a man, having been arrested by a constable without warrant upon suspicion of having committed murder, was examined as a witness at the coroner's inquest, it was held that the statements thus made by him were not admissible against him on his trial for the murder."

We quote again from the Bram decision, page 551: "In the cases following, statements made by a prisoner were held inadmissible, because induced by the language set out in each case: In Rex v. Griffin (1809) Russ & R. C. C., 151, telling the prisoner that it would be better for him to confess; in Rex v. Jones (1809) Russ & R. C. C., 142, the prosecutor saying to the accused that he only wanted his money, and if the prisoner gave him that he might go to the devil if he pleased; in Rex v. Kingston (1830) 4 Carr. & P., 387, saying to the accused: 'You are under suspicion of this, and you had better tell all you know;' in Rex v. Enoch and Pulley (1833), 5 Carr. & P., 539, saying: 'You had better tell the truth or it will lie upon you and the man go free;' in Rex v. Mills (1833), 6 Carr. & P., 146, saying: 'It is no use for you to deny it, for there is the man and the boy who will swear they saw you do it;' in Sherrington's case (1838), 2 Lewin C. C., 123, saying: 'There is no doubt thou wilt be found guilty, it will be better for you if you will confess;' in

Rex v. Thomas (1833) 6 Carr. & P., 353, saying: 'You had better split and not suffer for all of them;' in Rex v. Simpson (1834), 1 Moody C. C., 410, and Russ. & R. C. C., 410, repeated importunities by neighbors and relatives of the prosecutor coupled with assurances to the suspected person that it would be a good deal worse for her if she did not, and that it would be better for her if she did confess;' in Rex v. Upchurch (1836), 1 · Moody C. C., 465, saying: 'If you are guilty, do confess; it will perhaps save your neck; you will have to go to prison; if William H. (another person suspected, and whom the prisoner had charged) is found clear, the guilt will fall on you. Pray tell me if you did it;' in Reg. v. Croydon (1846), 2 Cox C. C., 67, saying: 'I dare say you had a hand in it; you may as well tell me all about it;' in Reg. v. Garner (1848), 1 Den. C. C., 329, saying: 'It will be better for you to speak out.' "

"In Reg. v. Fleming (1842), Arm. M. & O., 330, statements of a police officer suspected of having committed a crime, in answer to questions propounded by his superior in office, after the latter had warned the accused to be cautious in his answers, were held inadmissible. The court said: 'The prisoner and the witnesses being both in the police force, the prisoner, as the witness admitted, might have conceived himself bound to tell the truth; and the caution was not of that nature which should make the confession of the prisoner admissible.' "

"The latest decision in England on the subject of inducement, made by the court for crown cases reserved, is Reg. v. Thompson (1893), 2 Q. B., 12. At the trial a confession was offered in evidence, which had been made by the defendant before his arrest upon the charge of having embezzled funds of a certain corporation. Objection was interposed to its reception in evidence, on the ground that it had been made under the operation of an inducement held out by the chairman of the company in a statement to the relative of the accused intended to be actually communicated to the latter, that 'it will be the right thing for Marcellus (the accused) to make a clean breast of it.' The evidence having been admitted and the prisoner convicted, the question was submitted to the upper court whether the evidence of the confession was properly admitted. The opinion of the appellate court was delivered by Cave, J., and concurred in by Lord Coleridge, C. J., Hawkins, Day and Wills, judges. After stating and adopting the ruling of Baron Parke in Reg. v. Warringham, 2 Den. C. C., 447, note, to the effect that it was the duty of the prosecutor to satisfy the trial judge that the confession had not been obtained by improper means, and that where it was impossible to collect from the proof whether such was the case or not, the confession ought not to have been received. The opinion referred approvingly to the declaration of Pollock, C. B., in Reg. v. Baldry, that the true ground of the exclusion of statements not voluntary was that 'it would not be safe to receive a statement made under any influence of fear.' The court then quoted the rule laid down in Russell on Crimes as being a statement of the principles which had been restated and

affirmed by the lord chief justice in the Fennell case and added: 'If these principles and the reasons for them are, as it seems impossible to doubt, well founded, they afford to magistrates a simple test by which the admissibility of a confession may be decided. They have to ask, is it proved affirmatively that the confession was free and voluntary— that is, was it preceded by any inducement to make a statement held out by a person in authority? If so, and the inducement has not been clearly removed before the statement was made, evidence of the statement is inadmissible.' "

In the Bram decision the American cases are collated, and on page 560 it is said: "In the following cases the language in each mentioned was held to be an inducement sufficient to exclude a confession or statement made in consequence thereof: In Kelly v. State (1882), 72 Alabama, 244, saying to the prisoner: 'You have got your foot in it, and somebody else was with you; now if you did break open the door, the best thing you can do is to tell all about it, and tell who was with you, and tell the truth, the whole truth and nothing but the truth;' in People v. Barrick, 49 California, 342, saying to the accused: 'It will be better for you to make a full disclosure;' in People v. Thompson (1890), 84 California, 598, 605, saying to the accused: 'I don't think the truth will hurt anybody. It will be better for you to come out and tell all you know about it, if you feel that way;' in Berry v. United States (1893), 2 Colorado, 186-203, advising the prisoner to make a full restitution, and saying: 'If you do so it will go easy with you; it will be better for you to confess; the door of mercy is open and that of justice closed;' and threatening to arrest the accused and expose his family if he did not confess; in State v. Bostick (1845), 4 Harr. (Del.), 563, saying to one suspected of crime: 'The suspicion is general against you, and you had as well tell all about it; the prosecution will be no greater; I don't expect to do anything with you; I am going to send you home to your mother;' in Green v. State (1891), 88 Georgia, 516, saying to the accused: 'Edmund, if you know anything, it may be best for you to tell it,' or, 'Edmund, if you know anything, go and tell it, and it may be best for you;' in Rector v. Commonwealth (1882), 80 Kentucky, 468, saying to the prisoner in a case of larceny: 'It will go better with you to tell where the money is; all I want is my money, and if you will tell me where it is, I will not prosecute you hard;' in Briscoe v. State (1887), 67 Maryland, 6, saying to the accused: 'It will be better for you to tell the truth and have no more trouble about it;' in Commonwealth v. Nott (1883), 135 Massachusetts, 269, saying to the accused: 'You had better own up; I was in the place when you took it; we have got you down fine; this is not the first you have taken; we have got other things against you nearly as good as this;' in Commonwealth v. Meyers (1894), 160 Massachusetts, 530, saying to the accused: 'You had better tell the truth;' in People v. Wolcott (1883), 51 Michigan, 612, saying to the accused: 'It will be better for you to confess;' in Territory v. Underwood (1888), 8 Montana, 131, saying to the prisoner

that it would be better to tell the prosecuting witness all about it and that the officer thought the prosecuting witness would withdraw the prosecution or make it as light as possible;' in State v. York (1858), 37 New Hampshire, 175, saying to one under arrest immediately before a confession: 'If you are guilty you had better own it;' in People v. Phillips (1870), 42 New York, 200, saying to the prisoner: 'The best you can do is to own up; it will be better for you;' in State v. Whitfield (1874), 70 North Carolina, 356, saying to the accused, 'I believe you are guilty; if you are you had better say so; if you are not you had better say that;' in State v. Drake (1893), 113 North Carolina, 624, saying to the prisoner: 'If you are guilty, I would advise you to make an honest confession; it might be easier for you; it is plain against you;' in Vaughan v. Commonwealth (1867), 17 Gratt., 576, saying to the accused: 'You had as well tell all about it.' "

Thus stands the law in England and in nearly all of the States of this Union. Then, how stands the law under the decisions of the State of Texas? In the case of Raines v. State, 33 Texas Criminal Reports, 294 (26 Southwestern Reporter), it was said by this court: "If the inducements sworn to by the defendant were in fact held out to him by the deputy sheriff, then his admission of guilt were not admissible for any purpose, though he was cautioned."

In the case of Searcy v. State, 28 Texas Criminal Appeals, 514, this court said: "A confession to be admissible at all must be freely made and without compulsion or persuasion; and if the party is in jail, it must be made voluntarily after having first been cautioned that it may be used against him. The confession is not admissible unless it was voluntarily and freely made, uninfluenced by persuasion or compulsion, not induced by any promise creating hope of benefit or any threats creating fear of punishment. * * * Here the sheriff told the defendant that 'if he would tell him all about it, so that he could get all the parties, he would do what he could for him in his case.' This was not only a promise, but a persuasive and a positive one by an officer high in authority, and one in every way calculated to make the defendant believe that his condition would be bettered by making the confession. We are of opinion that the confession was inadmissible, and for error in its admission, the judgment is reversed and the cause remanded."

In the above case the opinion shows that the sheriff warned and cautioned the defendant before he received his confession.

In the case of McVeigh v. State, reported in 62 Southwestern Reporter, 757, this court reaffirms the decision in the Searcy case, and reversed and remanded that case because of the admission of the confession obtained under inducements not nearly so strong as the inducements in the case at bar.

In the case of Barnes v. State, 36 Texas, 362, it was said by the Supreme Court: "The legal proposition that confessions while made under arrest, induced by promises or threats, can not be used in evi-

dence against a defendant making them has been too long and definitely settled to now require argument or citation of authority to sustain it. It is also quite well settled as a presumption of law that the influence of threats or promises once made continue to operate until rebutted by proof clearly showing that it had ceased to operate. Peter v. State, 4 Smeeds & M., 31; Van Buren v. State, 24 Miss., 513; State v. Guild, 5 Halstead, 163; State v. Freed & Weber, 4 Tenn., 140."

In the following cases it has been held that it must appear that the confession was voluntary and the burden of proving that fact is upon the prosecution, not upon the prisoner; Cain v. State, 18 Texas, 387; Greer v. State, 31 Texas, 129; Williams v. State, 37 Texas, 474; Angel v. State, 8 Texas Crim. App., 451; Womack v. State, 16 Texas Crim. App., 178.

In the case of the State v. George, 15 Louisiana Annual, 146, it was held by the Supreme Court of that State: "That parties who arrested the prisoner, who were not public officers, must be viewed in no other light than public officers for the time being, and that the confession made under inducements held out by such parties could not be considered voluntary, and was inadmissible in evidence. Private individuals are allowed in some cases and required in others by the law to arrest offenders without a warrant of justice. The witness who arrested the prisoner must be viewed in no other light than as a public officer for the time being. They unquestionably were by arresting him exercising legal authority on his person."

In Rex v. Cooper, 5 Carr. & P., 535, 24 E. C. L., 444, it was said: "The committing magistrate had told the prisoner that he would do all he could for him, if he would make a disclosure. After this the prisoner made a statement to the turnkey of the prison, who held out no inducement to the prisoner to confess. It was held that what the prisoner said to the turnkey could not be received in evidence."

Many cases hold that injured persons are prosecutors and persons in authority concerning the making of inducements in order to obtain a confession. See 6 Am. and Eng. Enc. of Law, 2 ed., p. 546.

It has been held in many cases that "though the person offering the inducement is not actually one in authority, the confession will be inadmissible if he is supposed by the accused to have some power or authority to assure the promised good, or cause or influence the threatened injury." 6 Am. and Eng. Enc. of Law, p. 547; Greeg v. State, 106 Ala., 44; People v. Wolcott, 51 Mich., 612; People v. Clark, 105 Mich., 69.

In Commonwealth v. Tuckermann, 10 Gray (Mass.), 190, that court said: "It is certainly a clear as well as familiar principle of law that every free and voluntary confession is admissible in evidence against a party accused of any criminal offense, but that all those which are obtained from him by threats of harm or promises of favor and worldly advantage, held out by a person in authority, or standing in any relation from which the law will presume that his communications would be

likely to exercise an influence over the mind of the accused, are to be excluded from the hearing of judicial tribunals."

In conclusion upon this branch of the case, we assert with great confidence that the above authorities cited and discussed by us establish the following propositions: First, that an examination of an accused person under oath renders the statement or confession under such circumstances not admissible in evidence against such person. Second, that the truth or falsity of the statement of an accused person is immaterial; if the statement or confession of the accused person has been obtained by the very slightest inducement by way of hope or fear or compulsion, such statement is not one voluntarily made, and is therefore inadmissible in evidence against the accused; that any statement or confession, unless freely and voluntarily made, is inadmissible, because the accused person is protected as against an involuntary statement by the fifth amendment to the Constitution of the United States, and by section 10 of the Bill of Rights of the Constitution of Texas.

The court erred in permitting the witness E. Ducos, a witness for the State, to testify, over the objection of defendant, that on the 19th day of January, 1901, the defendant having been in jail since the 17th day of January, 1901, that he went to the house occupied by the defendant and the deceased prior to his death, and unlocked a wardrobe in one of the rooms of said house with a key which he borrowed from some other person, and in said wardrobe found an ax which had blood on it and hairs on it; because defendant had then been in jail for two or three days and had not been in possession of said house, or occupied the same for two or three days, and because said acts of said Ducos occurred in the absence of defendant, and were not binding on her; and in connection with the testimony of said Ducos the court erred in permitting the State to introduce in evidence said ax.

The court erred in the ninth paragraph of its charge to the jury, which is as follows: "When the evidence satisfies the mind of the jury, beyond a reasonable doubt, that the killing was the result of a previously formed design by the person acting to kill deceased, and that the design was formed when the mind was calm and sedate and capable of contemplating the consequences of the act proposed to be done by him, and such killing is further shown to have been unlawful and done with malice, then the homicide is murder in the first degree." In this: That by use of the words, "person acting," the charge became uncertain and misleading to the jury; and in connection with the facts of this case did not announce a correct rule of law, and was erroneous; that to be certain and capable of being understood by the jury, said charge, by name, should have distinguished between this defendant and Juan Rocha, if Juan Rocha was the person referred to by the court by virtue of the words, "person acting."

The court erred in the tenth paragraph of its charge, which is as follows: "To warrant a conviction of murder in the first degree, the

jury must be satisfied by the evidence, beyond a reasonable doubt, that the person acting before the act deliberately formed the design with a calm and sedate mind to kill the deceased; that he selected or used the weapon or instrument reasonably sufficient to accomplish the death by the mode and manner of its use. The act must not result from the mere sudden, rash and immediate design, springing from an inconsiderable impulse, passion or excitement, however unjustifiable and unwarrantable it may be." In this: That by the use of the words, "person acting," the charge became uncertain and misleading to the jury; and in connection with the facts of this case did not announce a correct rule of law, and was erroneous; that to be certain and capable of being understood by the jury, said charge, by name, should have distinguished between this defendant and Juan Rocha, if Juan Rocha was the person referred to by the court by virtue of the words, "person acting."

The court erred in that part of its charge wherein the jury are instructed as follows: "When an offense is actually committed by one person, but another is present, and knowing the unlawful intent, aids by acts or encourages by words or gestures the person actually engaged in the commission of the unlawful act, or who, not being actually present, keeps watch so as to prevent the interruption of the person engaged in the commission of the offense, such person so aiding, encouraging or keeping watch, is a principal offender." In this: That said charge was not applicable to any evidence in the case, does not announce a correct rule of law, and is not the statutory definition of a principal. Foster v. State, 8 Texas Crim. App., 249; Ross v. State, 10 Texas Crim. App., 249; Davis v. State, 36 Texas Crim. Rep., 548; Bracken v. State, 29 Texas Crim. App., 362; Garcia v. State, 26 Texas Crim. App., 193.

The court erred in its main charge wherein the jury were instructed as follows: "Any person who advises or agrees to the commission of an offense, and who is present when the same is committed, is a principal thereto whether he aids or not in the illegal act, and any person who is a principal under the rules herein above given you may be prosecuted, and if found guilty may be convicted and punished as such." In this: That said charge does not announce a correct or statutory definition of a principal; and is further erroneous in that, by said charge, a person who agrees to the commission of an offense is made a principal if he is present, regardless of whether or not such person in any manner participates in the commission of the crime, and holds such person responsible simply by reason of presence and previous agreement; and further because there was no evidence to which said charge could be applicable. Lister v. State, 3 Texas Crim. App., 17; Surrell v. State, 29 Texas Crim. App., 321. And for a long list of authorities to the same effect see White's Code Crim. Proc., art. 798; Sanders v. State, 38 Texas Crim. Rep., 343; Spillman v. State, 38 Texas Crim. Rep., 607; Chamberlain v. State, 25 Texas Crim. App., 398.

As to error in submitting general abstract propositions of law, see

Hackett v. State, 13 Texas Crim. App., 406; Croell v. State, 25 Texas Crim. App., 596; Duncan v. State, 30 Texas Crim. App., 1.

See section 799 of White's Code of Criminal Procedure for a large collection of authorities.

The charge must conform to the case as laid in the indictment. See White's Code Crim. Proc., sec. 800.

That the charge must be applicable to and limited to the evidence, see section 801, same book.

That defendant is entitled to a distinct and affirmative, and not merely an implied or negative presentation of the issues which arise upon his evidence, in order to prevent the jury from ignoring his defenses and to conduct them to a proper verdict if they find his evidence to be true, see Winters v. State, 37 Texas Crim. Rep., 582; Carver v. State, 36 Texas Crim. Rep., 552; White's Code of Crim. Proc., sec. 801b.

The court erred in that part of its charge wherein it defined the law of accessory, in that said charge did not announce the correct rule of law, was misleading to the jury, and the court did not apply the said law to the evidence in the case and affirmatively instruct the jury that if the facts in evidence, naming such facts, made this defendant an accessory, that then the jury should acquit defendant; that said part of said charge was further erroneous, in that the evidence relied on by defendant as constituting her an accessory, was not affirmatively called to the attention of the jury.

The court erred in that part of its charge wherein it instructed the jury that defendant would be a principal under the facts therein stated, which said charge is as follows: "And further believe beyond a reasonable doubt that the defendant, with express malice aforethought, advised the said Juan Rocha to commit said offense, or agreed with him that it should be committed, and that she was with express malice aforethought present at the time of the killing in pursuance of such advice or agreement, whether she aided or not in the illegal act." In that said charge was not a correct exposition of the law, because under the facts stated in said charge, defendant, if guilty, would have been guilty as an accomplice and not as a principal. Said charge was also erroneous, in that there was no evidence in this case which in any manner tended to show that this defendant ever agreed with Juan Rocha, or advised him to kill the deceased Grimsinger; that said charge was not only erroneous, but was misleading and prejudicial to the defendant. Said charge was furthermore erroneous in that it made this defendant a principal whether she was present or not, and as to whether or not she aided the said Juan Rocha in killing the deceased. Penal Code, arts. 74-88.

As to distinction between accomplices and principals: Cook v. State, 14 Texas Crim. App., 96; Hancock v. State, 14 Texas Crim. App., 392; Oneal v. State, 14 Texas Crim. App., 582; Bean v. State, 17 Texas Crim. App., 60; Philip v. State, 17 Texas Crim. App., 169; Smith v. State, 21 Texas Crim. App., 107; Watson v. State, 21 Texas Crim. App., 598;

Philip v. State, 26 Texas Crim. App., 598; Dugger v. State, 27 Texas
Crim. App., 228; Crook v. State, 27 Texas Crim. App., 198; West v.
State, 28 Texas Crim. App., 1; Armstrong v. State, 28 Texas Crim.
App., 526.

*Rob't A. John,* Assistant Attorney-General, for the State. [No brief
for State found with the record.—Reporter.]

DAVIDSON, PRESIDING JUDGE.—The term of the court at which
appellant's conviction occurred adjourned on March 2. Notice of ap-
peal was given later on, in the month of May, some two months after
the adjournment of the court, as shown by the caption and the record
entry of the notice of appeal. Notice of appeal must be given at the
term of the court at which the conviction occurred. This notice of
appeal was given, if the caption be correct, more than two months subse-
quent to. the adjournment of the term. The motion of the Assistant
Attorney-General to dismiss the appeal is granted. The appeal is ac-
cordingly dismissed.

*Appeal dismissed.*

BROOKS, JUDGE.—At the Tyler term, 1901, this case was dismissed,
and now comes before us on motion to reinstate. The defects in the
record have been cured, and the cause is now reinstated upon the docket.

By indictment returned at the January term, 1901, of the District
Court of Bexar County, appellant was charged with killing John Grim-
singer. The indictment contains three counts; the first, charging that
appellant killed John Grimsinger by striking him with an ax handle;
the second, by striking deceased with an ax; and the third, by striking
deceased with some instrument to the grand jury unknown, which can
not be ascertained and can not be given. Upon the trial appellant was
found guilty, and her punishment assessed at confinement in the State
penitentiary for life.

The following is substantially the facts adduced upon the trial: Ap-
pellant, a woman about 23 years of age, had been married to deceased
about five years; deceased had been living with his wife and little child
in a four-room house in the city of San Antonio for some time, and
worked as night barkeeper for his brother-in-law Ducos. He was on
duty from 7 o'clock at night until 7 o'clock in the morning, and slept
during the day. An old Mexican by the name of Juan Rocha worked
about the home and had been with the family for a long time. The
killing occurred between 5 and 6 o'clock in the evening. The Mexican
and appellant were seen together from 1 o'clock on the day of the murder
until about 5 o'clock that evening, or afterwards, at the woodshed, a
few steps from the residence of deceased. About that time Rocha en-
tered the residence and killed deceased with an ax or some blunt instru-
ment. Afterwards Rocha and appellant were arrested; and appellant,
upon being carried before the grand jury, made a voluntary statement,

after the usual statutory warning, in which she stated that while she and Rocha were in the yard on the evening of the killing, they discussed the killing of her husband, and agreed that Rocha should kill him; that she told Rocha her husband was mean to her when he drank. Thereupon the Mexican went into the house and killed deceased while he was asleep, she remaining on the outside of the house. In about fifteen minutes Rocha returned, and told her that he had killed deceased. Thereupon they went into the kitchen, appellant cooked supper, and she and her little girl, about five years old, sat down and ate supper with Rocha,—the dead body of her husband being in the adjoining room. Subsequently Rocha went into the room where deceased was, put deceased's clothes upon him, and about midnight took the body, carried it about a block from the house, and deposited it in the street. He then returned to the residence, where they discussed the propriety of burning the house. They then took some bloody clothes and other clothing, put them in a rocking chair and some in a barrel, and sprinkled oil over them. Appellant then took the little child and put her in the bed or cot upon which its father had been killed; that about 5 o'clock they set fire to the house. Rocha left the premises, stating he would go where they could not find him; and appellant started to leave after setting fire to the house. When she reached the gate she met a negro, and remarked, "My house is on fire." The negro replied, "Where?" She pointed to the house, and said: "Don't you see right there? It's on fire." The negro asked her if she had any buckets to put out the fire, and she told him "Yes.". The negro then gave the alarm of fire, and ran around the corner a short distance and gave the alarm there. The fire department was summoned. The negro secured the services of a white man, and finding the doors locked, kicked them in; and with some buckets the two nearly put the fire out. Appellant left the residence and went to a neighbor's, about a half block distant, in her stocking feet, carrying her shoes in her hand. She told this lady that her house was on fire. She hallooed to the parties approaching the burning residence, "Be certain and save my sewing machine." The neighbor asked her why she did not go down and superintend the saving of her things and show them where her clothes were. Appellant tried to put on her shoes, but could not. The neighbor loaned her a pair of shoes; she put them on and went back to the house. Thereupon appellant proceeded to wash the gallery, where there were some blood spots. In the meantime the fire department had arrived and extinguished the flames. One of the firemen discovered some burned clothes around a hole that had been burned in the floor, and started to take them out into the yard. Appellant objected to this, saying, "I will clean up; I will attend to it myself." The fireman raised up the clothes and they burned to a blaze; and then he took them out into the yard. The fire department left the premises, and thereupon two men came to the house, knocked at the door, and she opened it. One of the men said, "This looks mighty funny; Johnny is lying up there dead, and you had a fire

here this morning." She said, "What Johnny?" And he said, "Johnny, your husband." And one of the men states that she put her hand up to her face and burst into tears and closed the door. The other stated that she put her hand to her face, went inside, and. shut the door. Thereupon she left the premises, going in the direction of the same neighbor's house; and met another man, who asked her where she was going. She replied, "Why?" and burst into tears, and went to the neighbor's. She left her little girl there, and returned to her residence. The brother-in-law of deceased then arrived, and went into the residence, accompanied by a police officer. The brother-in-law called appellant by her given name, saying: "Johnny [meaning the dead man] was killed in this house and was carried up yonder, and the blood traces from where that body is to this house. It looks mighty strange. Now I want you to tell me who did this, so I can find out who it is and have him arrested." Appellant was silent. Witness said again: "If you want me to defend you, you must tell me who it was," and she replied: "O Ducos! O Ducos! what shall I do? What shall I say?" The evening prior to the homicide, about 8 o'clock, a messenger was dispatched from the saloon to the house and hallooed. Appellant came out on the porch, and the messenger stated that the brother of deceased and also the proprietor of the saloon wanted to know whether Johnny (deceased) was going that night to work, as his brother was feeling bad that night; they wanted to know if he would be at work. Appellant replied that deceased had already gone to work. (It will be noted that at this time her husband was dead.) The next morning a little boy came down to the house, and asked her where her husband was, and if she wanted him to go and tell her husband that the house had been on fire. She replied that her husband was at work at the saloon, and to go down there and tell him to come back, that the fire was out. Various witnesses on the next morning asked her as to the whereabouts of her husband, and she replied that her husband was at work. Defendant appeared to be calm and free from agitation or excitement all this while.

In addition to the foregoing, two or three days after the homicide, a bloody ax was found in the wardrobe in the house, which was practically identified as the ax of the codefendant Rocha; also a pillowslip and pillow, and dress and skirt were found in the watercloset upon the premises, quite thoroughly saturated with blood. As above stated, the blood traces were distinctly followed from the room where deceased was murdered to where he was found lying in the street, on the sidewalk. Appellant's own confession, after proper warning, before the grand jury, covers much of the testimony above detailed.

Appellant's first contention is that the court erred in overruling his second application for continuance. An inspection of the application in the light of the record before us discloses no error, since the testimony was cumulative. It appears that appellant proposed to prove by the absent witnesses that Rocha and deceased had a fuss and quarrel a

short while before the homicide. Appellant's confession fully disclosed this fact.

Appellant also urges that the court erred in permitting Fred W. Cook, who was foreman of the grand jury that returned the bill of indictment, to testify, over the objections of appellant, as to the statements or confessions made by appellant before said grand jury on the 17th day of January, 1901. His objections being that to divulge said statement or confession was in violation of article 404, Code of Criminal Procedure, and article 213, Penal Code, the truth or falsity of said confession or statements not being under investigation; she was then under arrest, and the same was not voluntarily or freely made, but was made by her under and by reason of hopes and inducements made and held out to her by members of the grand jury and other officers of the law that by making said confession or statement the said grand jury and other officers charged with the duty of enforcing the penal laws would, on account thereof, be light upon her.

The first objection has been passed upon by us in the case of Wisdom v. State, 42 Texas Criminal Reports, 579. We there held the admission or confession of accused made before the grand jury, after being warned in regard to the crime charged, was competent evidence against him on the trial. This case was followed by us at the Dallas term, 1902, in Giles v. State, 43 Texas Crim. Rep., 561, 4 Texas Ct. Rep., 650. However, we have read with great interest the careful and able brief of appellant's counsel upon this question, but we do not see any just legal reason for changing the rule laid down in those two cases.

Bill of exceptions number 3 (presenting the latter clause of the grounds of complaint) covers eighty pages of the transcript, and after a most painstaking reading and rereading of the same we deduce the following conclusion: Appellant was taken before the grand jury at the instance of the district attorney. She was there properly warned, as required by the statute. Thereafter she made a statement in which she shows her guilty participation in this crime. Some time after the confession was made, the following statement was made to appellant by a member of the grand jury: "If you desire us to be light on you, you had better tell the truth." Appellant then, in substance, expressed the hope that they would be light on her. As we understand the qualification of the learned trial judge to the bill of exceptions, nothing that appellant said after this statement was made to her by the grand jury was permitted to be proved against appellant. We do not think that the inducement held out subsequent to the confession will operate to exclude such prior confession made under and after proper legal warning. The inducement must precede or accompany the confession. Mental hope of immunity alone, entertained without any inducement creating the same, is not sufficient. There must be an inducement held out by a proper party as the basis of that hope of immunity, in order to avoid the introduction of the confession. Here, however, all statements made by appellant after the statement to the grand jury were excluded; and

there was a proper warning given and the proper predicate laid for the confession actually introduced. For further authorities on confession in jail, other than the Wisdom case, supra, see Lopez v. State, 12 Texas Crim. Appeals, 227; Thomas v. State, 35 Texas Criminal Reports, 178. In addition, we desire to call attention to the fact that appellant, prior to being placed in jail, was carried before the justice of the peace; and there the following conversation occurred, which we quote from the testimony of the district attorney as follows: "I took no part in the matter at all. My recollection is I was sitting at my desk, and the justice of the peace was at the window, and he said something to appellant about this being a peculiar sort of case; and the best you can do is to tell the truth and the whole truth about it; or, it would be much better for you, or something of that character. And appellant replied, 'There is no reason why I should do anything else,' or something like that. Then the justice of the peace left. I do not remember when the officers left, but I know the officers went off to see if there was a man by the name of Rocha; and appellant sat there for some time, and the sheriff returned to me, and informed me that there was such a man as Rocha. And I thought the circumstances were sufficient to warrant the action; and about half past 1 o'clock I told defendant that she would have to be arrested in this matter. It was the first information that she had at all that she was to be arrested, because she said, 'You are not going to arrest me, are you?' And I said, 'Yes, I expect, Mrs. Grimsinger, we will have to arrest you and put you in jail.' She said, 'Don't arrest me; don't put me in jail.'" The fact as to whether or not appellant was arrested at the time of the statement above detailed between her and the justice of the peace is somewhat controverted by other witnesses. But, concede the fact that she was under arrest, still the statement made by the justice of the peace would not justify the court in excluding the testimony. We have several times held that where the sheriff told the accused that it might be better for him to tell the truth, and similar statements, would not justify the exclusion of the confession on the ground that the same was not voluntarily made. For a full discussion of this matter, see Thompson v. State, 19 Texas Crim. App., 93; Parish v. State, 35 Texas Crim. Rep., 82; Anderson v. State, 54 S. W. Rep., 58; Carlisle v. State, 37 Texas Crim. Rep., 108; Williams v. State, 65 S. W. Rep., 1059.

Appellant's third objection is, because the said statement was made by defendant in the grand jury room, was reduced to writing, and having been so reduced at the time so made, said grand juror at the time acting as clerk of the grand jury; and that the said written evidence of her statement or confession was the best evidence, and which such writing was then in possession of the district attorney, by reason whereof the oral testimony of said statement was not admissible evidence. The trial court explains this bill with the statement that appellant offered this testimony; and this of itself disposes of his objection. However, the fact that the statement had been reduced to writing would

not exclude oral testimony of its contents or exclude other testimony given at the same time under the same sanction. Appellant complains because the court permitted the witness E. Ducos to testify, over her objections, that on the 20th day of January, 1901, defendant having been in jail since January 17th, that he went to the house occupied by defendant and deceased prior to his death and unlocked a wardrobe in one of the rooms of said house, with a key which he had borrowed from some other person, and in said wardrobe found an ax which had blood and hair on it. Appellant objected because defendant was then in jail and had not been in possession of the house or occupying the same for two or three days; and because said acts of said witness occurred in the absence of defendant, and were not binding on her. And it is contended that, in connection with the testimony of said witness, the court erred in permitting the State to introduce in evidence the ax. There was no error in the ruling of the court. The fact that appellant had not been in possession of the house for two or three days, and that other parties may have had access to the same, would only go to the probative force of the evidence and not to its admissibility.

Appellant insists that the court erred in the following portion of his charge: "When the evidence satisfies the mind of the jury beyond a reasonable doubt that the killing was the result of a previously formed design by the person acting to kill deceased, and that the design was formed when the mind was calm and sedate and capable of contemplating the consequences of the act proposed to be done by him, and such killing is further shown to have been unlawful, and done with malice, then the homicide is murder in the first degree." Appellant's objections to the charge are, "that by the use of the words 'person acting,' the charge became uncertain and misleading to the jury; and in connection with the facts did not announce a correct rule of law and was erroneous." The charge complained of, taken in connection with the whole charge, is correct, and we do not believe it was misleading or uncertain. This also disposes of a similar complaint with reference to the tenth paragraph of the charge of the court.

Error is assigned with reference to the following portion of the court's charge: "When an offense is actually committed by one person, but another is present, and, knowing the unlawful intent, aids by acts or encourages by words or gestures the person actually engaged in the commission of the unlawful act, or who, not being actually present, keeps watch so as to prevent the interruption of the person engaged in the commission of the offense, such person so aiding, encouraging, or keeping watch is a principal offender." Appellant contends that this charge was not applicable to any evidence in this case; does not announce a correct rule of law, and is not the statutory definition of a principal. "In order to render a person a principal in the second degree, or an aider or abettor, he must be present, aiding and abetting in the fact, or be ready to afford assistance if necessary; but the presence need not be strictly actual immediate presence, such a presence as would make him an eye

or ear witness of what passes, but may be a constructive presence." 1 Russ. on Crimes, sec. 49. The American and English Encyclopedia of Law defines "present" as follows: "Being in view or immediately at hand." In the case of Pryor v. State, 40 Texas Criminal Reports, 643, we had under consideration a similar question to the one now at issue. In that case by an inspection of the original papers we find that appellant was in the shed-room when the killing occurred in the front room of the residence. Appellant earnestly insisted under this state of facts that the court erred in not charging on the law of accomplice. We held that, under the facts, appellant was clearly a principal. In this case, defendant, under the most favorable aspects, was at the woodshed at the time her husband was killed in the house, a few feet away, having agreed with Rocha that he should go and kill her husband, and she was standing on the outside watching. Whether or not this last statement be true, her juxtaposition is such as clearly brings her in legal contemplation present at the homicide. It follows, therefore, that the court did not err in giving said charge. For a discussion of the law of principals, see McClain Crim. Law, secs. 199 and 204; State v. Arden, 1 Bayard, 487; 1 Am. and Eng. Enc. of Law, 2 ed., p. 258. Furthermore, we think the charge is a correct statutory definition of principals.

Complaint is also made as to the following portion of the court's charge: "Any person who advises or agrees to the commission of an offense, and who is present when the same is committed, is a principal thereto, whether he aids or not in the illlegal act; and any person who is a principal under the rules herein above given you may be prosecuted, and if found guilty may be convicted and punished as such." This charge is a substantial copy of article 78, Penal Code, which reads: "Any person who advises or agrees to the commission of an offense, and who is present when the same is committed, is a principal thereto, whether he aids or not in the illegal act."

Appellant objects in the tenth ground of his motion to the court's charge on the law of accomplices, in that the same was an erroneous statement of the law and inapplicable to the facts. The charge is an exact copy of article 79, Penal Code, defining accomplices; and we do not think the court erred in giving the same in full. The eleventh ground of the motion is with reference to the court's charge on the law of accessories. This is an exact copy of article 86, Penal Code, and the court did not err in giving the same in charge to the jury.

The twelfth ground of the motion complains of the following portion of the court's charge: "And if you so believe from the evidence, beyond a reasonable doubt, and further believe, beyond a reasonable doubt, that the defendant was, with express malice aforethought, present at the time and place of such killing, and knew the unlawful intent of said Juan Rocha, and with express malice aforethought aided by acts, or encouraged by words or gestures the said Juan Rocha in the commission of said offense," etc. Appellant complains that the charge is not applicable to the facts of this case, there being no evidence that defendant aided

the said Juan Rocha in killing deceased by acts, or encouraged him by words or gestures in said killing; or that she was present at the time of said killing; and said charge was misleading and prejudicial to defendant. It is our opinion that the charge is applicable to the facts adduced on the trial, and was properly given by the court.

The thirteenth ground of the motion for new trial complains of the following portion of the charge: "And further believe beyond a reasonable doubt that defendant, with express malice aforethought, advised the said Juan Rocha to commit said offense, or agreed with him that it should be so committed; and that she was with express malice aforethought present at the time of the killing, knowing the unlawful intent of said Juan Rocha, and that such killing was in pursuance of such advice or agreement, whether she aided or not in the illegal act." This is the law, and it is applicable to the facts of this case.

Appellant complains of the following charge: "And further believe beyond a reasonable doubt that defendant with express malice aforethought, knowing the unlawful intent of said Juan Rocha to kill and murder upon his express malice aforethought, did keep watch so as to prevent the interruption of the said Juan Rocha in the committing of said offense, though not actually present, then you will find the defendant guilty of murder in the first degree," etc. There was no error in giving this charge.

Appellant's sixteenth complaint is with reference to the court's charge on circumstantial evidence. The charge is correct as given, and it was not necessary or required to make an application of the law to the facts. Appellant also complains of the court's charge on insanity. We do not think the charge is subject to the criticism urged by appellant.

Appellant, in the eighteenth ground of his motion, complains that the evidence raised the question of fact to be determined by the jury as to whether, under all the circumstances of the case, the confession of defendant before the jury, and admitted in evidence, was freely and voluntarily made, and as to whether she had been properly warned and cautioned as to whether or not the said confession was the result of fear or hope, and that the court should have instructed the jury affirmatively on that subject. An inspection of the record discloses the following facts: At the time the district attorney attempted to lay the predicate for the introduction of the voluntary statement of appellant before the grand jury, appellant, through her counsel, requested the court to have the jury retire pending the introduction of this testimony. After hearing the testimony, the court ruled that the predicate was properly laid. Thereupon appellant filed various exceptions, which have heretofore been discussed, as to the introduction of the testimony. Thereupon the district attorney offered anew the witness Fred Cook to prove the predicate before the jury; and at that juncture the following colloquy ensued: "Mr. Ward, of counsel for appellant, stated: 'If your honor please, I understand that matter was all gone into before your honor this morning, and to go into that matter again, it will necessitate

our taking fresh exceptions.'   The district attorney replied, 'All right, if we are to be held to that.'   The court replied, 'There is no necessity for it.'   Mr. Ward:  'Your honor understands this was all gone into, and we saved exception that we dictated to the stenographer this morning. We objected to the whole of Mr. Cook's testimony.   Your honor has overruled these objections, and we have excepted, and we can see no use of consuming time going all over it again.'   Then the confession that defendant made to the grand jury was detailed to the jury, and no testimony was introduced before the jury touching the predicate."

Under this state of facts, even conceding appellant's contention that it was an issue of fact, as to whether or not the confession was voluntary, this issue was decided by the court, and no evidence thereon was submitted to the jury; hence it was not error for the court, under any contingency, to fail to charge the jury on the issue complained of.   Highsmith vs. State, 41 Texas Crim. Rep., 32.

The court charged the jury that if they believed appellant was an accomplice or accessory to acquit, after defining what an accomplice and accessory were.   The charge was a proper charge; but there was no necessity, under the view we take of this case, of giving the same at all, since under all the evidence appellant was clearly a principal and not an accomplice or accessory.

We do not deem it necessary to discuss any other issues.   The charge of the court is correct, and admirably presents the law of this case.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

BROOKS, JUDGE.—Appellant's motion for rehearing is based upon two propositions:   (1)   That the court erred in admitting the confession of appellant made before the grand jury, through the witness Cook; (2) that the court erred in not instructing the jury in substance, that appellant was not a principal.   The latter ground we will not discuss, as it is fully disposed of in the original opinion.

Appellant's third bill of exceptions brings in review the manner in which the confession of appellant was obtained through the mouth of the witness Cook.   In order that there may be no misconception of the facts, we state the record rather at length, as it pertains to the ground of objection, the manner of making it, and the judge's explanation appended to the bill.   When Cook was offered as a witness for the State, preliminary matters in regard to predicate were suggested by appellant's counsel, and the jury were withdrawn from the courtroom.   While the jury was thus retired, a great mass of testimony, covering sixty pages of the transcript, as shown by the third bill, was introduced in regard to the predicate, as the basis for the introduction of the said confession.   This evidence shows that the killing occurred in the evening.   The following morning, about 9 o'clock, while the officers were

investigating the homicide, they reached the conclusion that appellant was cognizant of the facts connected with the homicide, and perhaps criminally connected with it; so they took her in charge. Some time during the morning she was placed in jail in a room or cell by herself. The district attorney instructed the jailor to prevent any one communicating with her, and his instructions were obeyed. She was carried before the grand jury about 4 o'clock that evening as a witness. About the time she left the jail, or just preceding that time, an attorney called at the jail and asked to see appellant, stating that he was her attorney. This was not known to appellant at the time, nor had she sent for an attorney. Under the instruction given by the district attorney, this interview was refused. The attorney called upon the district judge in regard to the matter, and, while they were discussing the matter, the district attorney communicated with the district judge over the phone to the effect that he desired to be present before anything was done with reference to appellant, and the attorney desiring to interview her. About the time he reached the courtroom where the district judge and attorney were, the bailiff of the grand jury passed by with appellant, en route to the grand jury room; and the district judge remarked that she is now going to the grand jury room, and you can see her after she returns. When carried before the grand jury, she was fully warned and cautioned as required by the statute, and made quite a detailed statement in regard to the homicide and her connection with it, as well as that of her coconspirator, Juan Rocha. About the time she completed her statement, as testified by Cook, she began to make contradictory statements; and one or more of the grand jurors remarked that she must tell the truth if she desired the grand jury to be light on her. Whereupon she made further statements in regard to the matter and at the conclusion of her statement, as she was leaving the grand jury room, remarked that she hoped the grand jury would be light on her. This is a sufficient statement of the predicate, which covers over sixty pages of the transcript. When this was finished, the court took a recess until 2 o'clock. Upon its reconvening, the bill recites: "Appellant's counsel objected to permitting the witness Cook to testify to the statements or confessions of defendant made to or before the grand jury, for the following reasons, to wit: (1) Because her statement or confession was testimony given before a grand jury, and its admission in evidence violates the law in reference to divulging testimony given before a grand jury. (2) Because, at the time of the purported statement or confession or testimony of defendant, she was under arrest, and it is not shown that said statement or confession or testimony was voluntarily and freely given. (3) Because it appears from the testimony that defendant was under arrest, and that the confession or statement was obtained from her by promises or hope held out to her by Judge Adams, the justice of the peace, and by one of the grand jurors. (4) Because the testimony of this defendant before the grand jury was reduced to writing by Edwin Chamberlain, the clerk or secretary of the

grand jury, and this written evidence of her statement was the best evidence of what she stated before the grand jury." "Whereupon the jury were brought back into court and the said witness Fred Cook placed upon the stand, and, over the aforesaid objections of defendant, permitted to testify," etc. Then follows the testimony of the witness Cook. It is unnecessary to place the testimony of Cook in the opinion. The substance of it was a repetition before the jury of the incriminating statements made by appellant before the grand jury. This bill is qualified by the court as follows: "After the preliminary examination before the court in the absence of the jury of the witness Cook, and other witnesses, as shown in the first part of this bill, the court ruled that the statement made by defendant in the grand jury room up to the time that she was told that she would have to tell the truth, that the grand jury could only help her if she told the truth, and after said statement was made to her, her statements would not be admitted, and that nothing the witness could not distinctly separate and make certain as being stated before that time would be admitted, and that the same rule would apply to all witnesses, and that unless they could so separate said statement as to make certain of excluding all statements made by defendant after said statement to her, they would not be allowed to testify at all. After this, the witness Cook testified on direct and cross-examination before the jury as shown herein, and no further objection whatever was made to his testimony or any part of it. After which the defendant placed upon the stand Edwin Chamberlain, one of the said grand jurors, who testified that he had tried to write down the substance of defendant's statement before the grand jury; that it was not complete, and would need some explanation. He was then allowed, over the objection of the State, to read said written statement to the jury and supply missing words, and otherwise explain by adding to and explaining the language used by him from his memory of what occurred in the grand jury room, as shown in the statement of facts." As a preliminary statement, the bill of exceptions and the qualifications of the judge show unequivocally that only the testimony of Cook was introduced before the jury, and no statement after the alleged inducement was held out to her by the grand jury was introduced or admitted by the court in evidence.

The rule of practice is settled without conflict of authority that the qualification or explanation of the judge appended to bill of exceptions will control the recitals in the bill so far as such explanation modifies such recitals; and where counsel accepts a bill with the qualification of the judge indorsed thereon, and files the same, he estops himself from claiming it to be other than as the qualification makes it. White's Ann. Code Crim. Proc., sec. 861.

Now, with reference to the fourth ground of exception, that the confession of appellant reduced to writing by Chamberlain was the best evidence of what she stated before the grand jury, we would simply say that the court's qualification of the bill of exceptions states that the defendant placed Chamberlain (secretary of the grand jury) upon the

stand, who testified that he tried to write down the substance of appellant's statement before the grand jury, and that it was not completed and needed some explanation, and over the State's objection permitted said written statement to go to the jury, and Chamberlain supplied the missing words, and otherwise explained it by adding to and explaining the language used by him, from his memory of what occurred in the grand jury room, as shown in the statement of facts. Certainly appellant will not be heard to complain that Chamberlain's testimony went before the jury at her instance, and over the State's objection. The court had sustained her objection to this testimony, and it would have been excluded altogether but for her act introducing it.

In regard to the first ground of objection, that the admission of the confession of appellant made before the grand jury violates the statute with reference to the oath preventing the divulgence of evidence given before that body, we would state that in an unbroken line of decisions from Clanton's case, 13 Texas Criminal Appeals, 139, to the present time, it has been uniformly held that confessions or statements of an accused or witness given before the grand jury can be used for the purpose of impeachment. Gutgesell's case, 43 Southwestern Reporter, 1016, which apparently excludes statements before the grand jury as original testimony, recognizes the rule that it can be introduced for the purpose of impeachment. If Gutgesell's case is correct upon this, then it is so in the face of the statutory oath of secrecy taken by the witness before the grand jury. It is as much a violation of the oath of secrecy to use this character of testimony for impeachment as it is to use it as original testimony. There is no exception in the statute in favor of impeaching testimony. So far as we are aware, except in Ruby's case, 9 Texas Criminal Appeals, 353, and Gutgesell's case, it has been the uniform rule in this State to admit the confessions of a defendant made before the grand jury, provided he had been given the statutory warning—the question of inducement aside. For collation of authorities bearing on this question see White's Ann. Code Crim. Proc., secs. 307, 116, subdiv. 7; particularly see Paris v. State, 35 Texas Crim. Rep., 82; Thomas v. State, 35 Texas Crim. Rep., 180; Gardner v. State, 28 S. W. Rep., 470. In the Paris case, Judge Henderson, delivering the opinion of the court, said: "He also objected to the testimony of one Ripley Harwood, a member of the grand jury, as to the statements of appellant made before the grand jury in the investigation of this case, claiming that same was not freely and voluntarily made, but that same was still affected by the promise of said Cornwell, as evidenced by the fact that, before he made the said statement before the grand jury, he asked them for a written agreement that he would not be prosecuted for the murder of deceased. The court overruled the objections of defendant, and allowed the testimony. We have examined the record in this case, and this action of the court in admitting the testimony we see no error. The evidence shows that, whatever may have been the suggestions made

to the defendant by Cornwell, before he made any statement to Cabell he was rewarned by that officer; and, as to the statements made by defendant before the grand jury, he asked to be brought before the grand jury of his own accord, and, while he insisted that the grand jury should make an agreement with him to protect him against prosecution, they expressly told him they had no power in the premises. This decision recognizes very clearly that the confessions of the defendant are admissible, even when made before the grand jury, he being properly warned." In Thomas' case, supra, Judge Hurt uses this language: "A full confession of guilt with the particulars of the crime was made before the grand jury voluntarily, and after being cautioned. This confession was introduced in evidence against defendant over his objection, the objection being that you could not admit the confessions because they were made before the grand jury. It is settled in this State that while such evidence is not properly admissible for all purposes, nor in reference to all proceedings of the grand jury, it is competent when in the judgment of the court it is material to the due administration of justice. The case of Ruby v. State, 9 Texas Criminal Appeals, 353, was overruled in Clanton's case, 13 Texas Criminal Appeals, 139; Thompson v. State, 19 Texas Criminal Appeals, 594; Scott v. State, 23 Texas Criminal Appeals, 522."

It is conceded that this appellant at the time of this confession before the grand jury, was under arrest and suspected of the crime of which she was subsequently indicted and tried. It was not known at the time that she was guilty. The killing had just occurred the night before and the grand jury and the officers were making the necessary investigation to locate the criminality. It is contended by appellant that, where a defendant is carried before inquisitorial bodies, such as examining courts and grand juries and is suspected of crime, it is not proper or legal to put him under oath in detailing his testimony. Our statute in reference to examining courts provides that the examining magistrate shall notify defendant it is his privilege to make a voluntary statement, which, if he makes, shall be reduced to writing and read over and signed by him; but he shall not be sworn. There is no such provision of our law with reference to grand juries. If it were necessary, it would be a sufficient answer to this contention of appellant to rest the matter here. But this question has been before the courts in more than one case in regard to confessions, where the question arose before the examining court; and it has been held that sworn confessions before examining courts can be used against accused. Jackson v. State, 29 Texas Crim. App., 458; Salas v. State, 31 Texas Crim. Rep., 485. In each of these cases appellant's confession was reduced to writing and sworn to by him. It was contended by appellant in argument that under statutes like the one under discussion no decision could be found which authorized the sworn confession of a party accused of crime to be taken before the examining court and subsequently introduced against him. The two cases cited, supra—the opinion in the one has been delivered by Judge White, while

presiding judge of this court, and the other by Judge Hurt, while occupying the same position, and without dissent in either case—have never before been questioned. We are referred to Wood's case, 22 Texas Criminal Appeals, 431, as authority to sustain appellant's contention. In Wood's case appellant was under arrest, at least was in charge of the officers and under suspicion of the crime undergoing investigation when he was called before the examining magistrate, placed under oath and his testimony taken. However, he was not cautioned. The court held in this character of case that the testimony of the defendant can not be used under such circumstances against him, unless he has been cautioned. And this significant language is found in the opinion: "Looking then to the facts which surround this matter there can be no question but that appellant was in arrest and not being cautioned as the code requires, his testimony taken before the inquest was not competent evidence against him." That case is in line, as we understand, with all the other authorities in this State. It simply held as a matter of justice and in obedience to the plain statutory requirements that before the confessions of a party who is under arrest can be used against him, he must be cautioned. The question in that case was not that contended for by appellant; that is, that the testimony was rejected because he was sworn, but it was rejected because he was not cautioned—for the language used by Judge Hurt in that opinion clearly indicates, if he had been cautioned, although sworn, the testimony could be used against him.

In regard to the instruction of the district attorney to the jailer that no one should be permitted to communicate with appellant, and that she should be kept in close confinement, and the obedience of that order to the extent of declining the interview solicited by the attorney with appellant, this occurring without the knowledge of appellant, could certainly have no effect whatsoever upon whether her confession was voluntary or involuntary in its nature. That the attorney sought the interview was not known to appellant. It therefore could not have affected her mental status in any particular whatsoever in her statement before the grand jury. Nor is the fact that the counsel was so denied the interview, as urged in the bill of exceptions, a reason why the confession should have been excluded. If she or her counsel were of the opinion that some right, constitutional or statutory, accorded her had been violated by the action of the district attorney or by the action of the jailer, or in the matters referred to, it could have been urged in the proper way.

The motion for rehearing is accordingly overruled.

*Motion overruled.*

HENDERSON, Judge (dissenting).—Appellant insists that the court erred in admitting in evidence the confession of Mrs. Grimsinger, made by her before the grand jury, and as testified to by the witness Cook. Appellant urges that said confession made before the grand

jury was not admissible in evidence on the ground that the truth or falsity of any statement made by her, not being an issue, it was not competent for the State to go into the grand jury room and produce her confession against her. This contention was formerly the law in this State. Hines v. State, 37 Texas Crim. Rep., 339; Gutgesell v. State, 43 S. W. Rep., 1016; Christian v. State, 40 Texas Crim. Rep., 669. These cases, however, were overruled in Wisdom v. State, 42 Texas Criminal Reports, 579, from which I dissented and therein gave my views fully upon the question. The law, however, was settled in that case, and has since been followed (Giles v. State, 43 Texas Crim. Rep., 561), and no more need be said concerning this objection. Appellant further excepted to said confession on the ground that, notwithstanding the warning may have been given, the same was not free and voluntary, as required by law. It is insisted that said confession was not free and voluntary, because an oath was administered to her in the grand jury room. A majority of the court maintain that the oath administered to Mrs. Grimsinger as a witness in her own case in the grand jury room does not vitiate the confession. And in support of their views they cite Jackson v. State, 29 Texas Criminal Appeals, 458, and Salas v. State, 31 Texas Criminal Reports, 485. An examination of the first named case will show that it is not in point, inasmuch as the confession there was admitted, notwithstanding it was sworn to by defendant; but this was on the ground that in connection with such admission the party made statements of facts and circumstances that were afterwards found to be true, which conduced to establish his guilt. This is provided for by statute. It is true, in the Salas case, that the sworn statement, made before the examining court was admitted in evidence, but the able judge who rendered the decision in that case did not enter into a discussion of our statute regulating voluntary statements before examining magistrates. Article 283, Code of Criminal Procedure, provides, among other things, that such voluntary statement shall not be sworn to by him. It would seem to me, if the statute means what it says, when it provides that a voluntary statement shall not be sworn to by an accused person, that if it is sworn to, it is not a voluntary statement as authorized by law, and ought not to be admitted in evidence. When the Legislature enacted our statute on the subject, it had in view the common law rule, which rendered the confession of a party before an examining magistrate, if made under oath, inadmissible as not being voluntary on account of the oath. People v. McMahon, 15 N. Y., 384. I refer to this case for a full discussion of the subject, supported by the authorities cited; and I believe it has a direct bearing on this case, so far as this question is concerned. It occurs to me that if a statement made by an accused person before an examining court, if sworn to, is not admissible on that account, then, by a stronger reason, when a statement of an accused person taken before the grand jury, and is there made under oath, such statement should not be admissible.

But concede that the oath administered to Mrs. Grimsinger, when she

was carried before the grand jury, did not invalidate her statement as a free and voluntary confession, still, under the testimony in this case as a predicate for the confession, I do not believe that the same was admissible as a free and voluntary confession, because of her environments or the facts and circumstances which surrounded her at the time she made the confession. In order to present this matter, I will briefly review the circumstances under which this confession was extorted from appellant. This homicide was committed on the night of the 16th day of January, 1901. Early the next morning appellant was arrested by an officer and taken into custody. (See record, Stevens' and Green's testimony.) About 9 o'clock she was carried by the officer before Mr. Adams, justice of the peace. There she was held in custody for several hours, being examined by said justice and the county attorney as to what she knew of the alleged murder. It does not appear that she was either sworn or warned by these officers. In their endeavor, however, to find from her what she knew about the murder of her husband, the justice of the peace informed her, in the presence of the county attorney, and evidently with his sanction, that it would be better for her if she would tell the whole truth about the murder. She was informed by him "that the circumstances of the case were peculiar, and the thing for her to do in order to get out of it and have it to be light on her, was to tell us the whole truth about it." Notwithstanding their zealous endeavor, it does not seem they were successful in inducing her to make the confession. After their futile attempt, about 1 or 2 o'clock, she was conveyed to the jail by the officer, and was there, according to the testimony, placed incommunicado; that is, the jailer and his deputies were instructed not to permit anyone to see or talk with her. Shortly after she was placed in jail, Mr. Newton, her attorney, endeavored to procure an audience with her, which was refused. He then sought the district judge, in order to induce him to permit him to have an interview with his client. It seems that he got in communication by telephone, or otherwise, with the judge. In the meantime, however, the county attorney telephoned to the judge not to permit an interview until he should see him. Meanwhile the sheriff and county attorney were busy procuring a reassembling of the grand jury, evidently for the purpose of carrying defendant there to testify in her own case. Some time in the evening, about 4 o'clock, the district judge came to the courtroom and Mr. Newton (appellant's counsel) had an audience with him for the purpose of procuring permission to see appellant. It appears the judge was about to grant the order, when appellant, in charge of an officer, was seen passing through the room on her way to the grand jury room. The judge informed him that he could see her after she should be brought out of the grand jury room. The judge states that he permitted her to be sent before the grand jury before he allowed defendant's counsel to see her. The county attorney was also present at this interview. When she was carried before the grand jury she was there sworn as a witness to testify concerning the murder of deceased, John Grimsinger.

She was there warned in accordance with our statute on the subject, and was then examined and cross-examined by members of the grand jury and county attorney in regard to the case. During the progress of the examination, or cross-examination, whichever it may be termed, she was told she would have to tell the truth; that the grand jury could only help her if she told the truth. This was told her while she made or was making some conflicting statements. After she had made the statement, and before she left the grand jury room, she waited,—she seemed to hesitate; and she was then asked whether she had anything more to say, and she then made some remark about hoping the grand jury would be light on her. The judge, in explaining this bill, says he did not admit any of her statements before the grand jury after she was told by one of the members that if she would tell the truth they would be light on her. These were substantially, as I understand, both from the record and the opinion of my brethren, the facts and circumstances which surrounded appellant when she made the statement in the grand jury room which was used against her. Our law, following the rule of the common law, carefully scrutinizes the circumstances under which the confessions are made, and rejects confessions altogether unless entirely voluntary. After the arrest, our statute safeguards the accused person against the inquisitorial powers of officers and courts. Not only is a warning required to be given before the evidence may be used against the accused, but it must also appear, in addition thereto, that the statement was not induced by coercion or persuasion; and whenever the question is raised as to the free and voluntary character of a confession, while it is primarily for the decision of the court, the burden is on the State to show that it was free from any improper influences. As was said in Thomas v. State, 35 Texas Criminal Reports, 178, "The burden is on the prosecuting power to show that the confession was voluntary. A confession made with no expectation of bringing good or averting evil, is termed a voluntary confession. The real question being in every case whether the confessing mind was influenced in a way to create a doubt of the truth of the confession. The burden is on the State, and the doubt must be excluded. A confession involuntarily uttered to bring temporal good or avert temporal evil, even when the contemplated benefit is small, must be rejected. The circumstances under which the confession is made are of very great importance; and they must be looked to in every case, and when this is done, and there is nothing pointing to the motive prompting the confession, it will be received. Now, when there is an express or implied promise to aid a suspected person, or a threat of temporal injury, or when the suspected person is told that it will be better for him to confess, this does not always solve the question. It is true that the inducement under which the confession was uttered is of prime importance; but it is not always decisive. The inducement and surrounding circumstances decide the question. The inducement may not be sufficient to show the motive for the confession; but, when read in the light of the surrounding circumstances, may be ample proof of the

truth of the confession." I quote from Bram v. United States, 168 United States, 532, on the same subject as follows: "The rule is not that, in order to render the statement admissible, the particular communication contained in the statement must be voluntarily made, but they must be sufficient to show that the making of the statement was voluntary; that is, if from the causes which the law treats as legally sufficient to engender in the mind of the accused a hope or fear in respect to the crime charged, the accused shall not be involuntarily impelled to make a statement when but for the improper influences he would have remained silent." And again, I quote as follows: "Although the facts would, when isolated from the other circumstances, not be sufficient to warrant an inference that the influence compelling the confession had been exerted, yet when taken as a whole, they may give room to the strongest inferences of undue influence."

If the doctrine here laid down be correct, the fact that an accused person may be warned with all the solemnity required by the statute that what he should say may be used against him, and that no statement whatever can be compelled, does not of itself always solve the question; but this warning is to be viewed in the light of the surrounding circumstances. If these show that the party was entirely free in making the statement, then the warning given is the safeguard authorizing the admission of the confession. If, on the other hand, every fact and circumstance tends to show either coercion or persuasion, then the statement is not admissible, no matter how freely or solemnly may have been the warning given. If this doctrine is not correct, but the warning alone guarantees the admission of the statement as a confession, then it would follow by the same logic that a mob may take a prisoner from jail at midnight, convey him to a secluded spot, place a rope around his neck, with the other end thrown over a limb of a tree, then warn him under the statute and ask for his confession; and if through terror he gives it, it will be received in the courts of the country. I take it that we are authorized to take into consideration not only the warning, but all the facts in evidence tending to show the condition of appellant's mind at the time she made the statement. It may be that, as explained by the judge, what was said to appellant by one of the members of the grand jury, that if she would tell the truth the grand jury would help her, made as explained by the judge after she had given her inculpatory statement, would not of itself exclude the testimony; but when we look back across the record to a promise of similar import made by the justice of the peace in the morning, in the presence of and with the assent of the county attorney, and when we recall the fact that this same county attorney was present at the examination in the grand jury room, and that appellant was mindful of his presence and authority in the premises, it shows that when she made the statement her mind must have been influenced by a similar promise made to her by one in authority in the morning, and who was then present.

In addition to this we must also remember that appellant after her

examination in the morning before the justice had been placed in-
communicado; that is, she was not allowed to consult with anyone;
not only were her friends refused permission to communicate with her,
but she was deprived of the privilege of consulting with her counsel. It
is said, however, that this occurred without the knowledge of appellant,
and consequently could have no effect on her mind, as she did not know
that an attorney had been employed for her. (The record shows that
he was employed by her brother.) While this is true, yet it is a signifi-
cant fact tending to show the coercive means that were being used by
the officers in charge in order to compel what should be a voluntary
confession. Evidently she knew that she was isolated and she was led
to believe by the officers through this means that she was abandoned
by her friends. She was not permitted to know that they had employed
counsel for her. I do not think that any question can be raised at this
day as to the right of her attorney to consult with her at the jail, and to
advise her at every step in the proceeding being taken against her. To
hold otherwise would be in effect to deny the right of counsel alto-
gether. Her attorney seems to have taken this view of the matter, and
to have insisted on his right. In the meantime an effort was evidently
being made by the officers to thwart this purpose, until appellant should
be taken without her consent as a witness in her own case before the
grand jury. That the attorney may have advised her to keep her own
counsel is no answer to the proposition. As her lawyer, he had a right
to tell her "that in all criminal prosecutions the accused shall not be
compelled to give evidence against herself." Art. 1, sec. 10, Bill of
Rights. But he was not afforded this privilege; but sees his client
taken without her or his consent before the grand jury to testify against
herself in her own case. We know that, if during the trial the State had
suggested that appellant be placed upon the stand in order to testify,
this alone would require a reversal. Art. 770, Code Crim. Proc. The
Legislature, when it came to authorize a defendant to testify in his or
her own case, safeguarded the right, so that it could not be used to the
prejudice of a defendant. Yet here the spectacle is presented of the
State being permitted to do by indirection what it could not have done
by direct proceeding. The State could not require Mrs. Grimsinger to
testify against herself in her own case on the trial thereof; but by this
proceeding the State is permitted, without the consent of appellant, to
take her before the grand jury as a witness in her own case, and there
swear her, and because she was warned, introduce her statement in
evidence against her. It occurs to me that this is a more dangerous
assault upon the rights of defendant under the Constitution, being
before a secret tribunal, than if it had been consummated in the open trial
before the jury and within the public view. As I have recounted, not
one, but every circumstance transpiring on that eventful morning was
calculated to inspire appellant with either hope or fear, and to show
her state of mind, the last expression used by appellant before she left

the grand jury room was the expression of her hope that they would be light on her. Doubtless she expressed this because hope had been held out to her, while her fears were quickened and her apprehensions alarmed by the methods adopted in securing her statement. I do not believe in the administration of the law it was ever intended under our system to resort to such methods, which smack too much of the inquisition; and I fear it will constitute a bad precedent.

I note in this connection that some cases are referred to where the testimony of confessions made before grand juries has been admitted in evidence, to wit: Paris v. State, 35 Texas Crim. Rep., 82; Thomas v. State, 35 Texas Crim. Rep., 180; Gardner v. State, 28 S. W. Rep., 470. These cases, however were rendered before the Hines and Gutgesell cases heretofore cited, and followed a misconception of what was stated in Clanton's case, 13 Texas Criminal Appeals. These cases show that the appellant voluntarily went before the grand jury. But it is not believed that any case can be found where an accused has been taken without her consent to testify before the grand jury in her own case, although the party was warned that such testimony can be used against her.

There are other questions discussed in the opinion to which I do not agree. I believe the court should have given the charge predicated on defendant's theory, that she was not present at the time of the homicide, and did not agree nor consent to the killing of her husband and did not act in aid thereof while it was being done. But I do not deem it necessary to enter into discussion of these matters, as I believe the case should have been reversed on account of the improper admission of appellant's confession as heretofore discussed.