BOB KENNON v. THE STATE.

No. 2831. Decided June 24, 1904.

**1.—Charge of the Court—Omission of Word Not Material.**

Where the court in his charge to the jury submitting the law of ownership in a case of theft, omitted the word "actual" in defining possession by care, control and management of the property stolen, there was no reversible error.

**2.—Evidence—Hides of Cattle—Secreted.**

Testimony of a deputy sheriff to the effect he found the hides of cattle in a culvert on the public road, the day following the arrest of defendant, which were identified as the hides of the cattle alleged to have been stolen, was admissible.

**3.—Bill of Exception—Immaterial Testimony.**

Where the bill of exception does not show what the witness would have answered, it can not be considered; but aside from this, the fact to what extent it was known in the community that defendant was butchering for the public, was immaterial.

**4.—Same—Testimony of Wife.**

Where the bill of exception does not show that the testimony of the wife of defendant was not germane to a legitimate cross-examination of the witness, it can not be considered.

**5.—Same—Objection Too General.**

When objections to the admission of testimony are too general, they will not be considered.

**6.—Confessions.**

Where appellant had been previously to the confession, warned by another officer and a short while before, the proper predicate had been laid for such confession or statement.

**7.—Witness—Expert or Opinion Testimony.**

Where a witness had qualified himself to give an opinion by testifying that he had been engaged in handling cattle, he could state that the cattle in question showed that they had been driven hard and were drawn, and such testimony was pertinent in a case of theft where there was evidence that the cattle had been stolen from a pasture and driven away.

**8.—Witness Under Rule—Discretion of Court.**

It is within the discretion of the court to refuse to place deputy sheriffs under the rule, because they are needed to wait on the court.

**9.—Confessions—Proper Warning—Issue for Jury.**

The issue as to the proper warning to defendant that any statement he might make would be used against him was properly presented for the consideration of the jury in the court's charge.

**10.—Impeaching Witness—Issue Must Be Material.**

When the predicate for impeachment of a witness was properly laid upon a material issue, the impeaching testimony is properly admitted.

Appeal from the District Court of Tarrant. Tried below before Hon. Irby Dunklin.

Appeal from a conviction of theft of cattle; penalty, four years imprisonment in the penitentiary.

The State proved that four steers were taken out of the pasture of J. W. Corn; the ranch or pasture was in the care, management and control of his son, W. L. Corn, who was alleged to be the owner of and in possession of the said cattle or beeves. W. L. Corn had some beeves in a bunch he was feeding and caring for on said ranch; one of the beeves taken from said pasture on the 4th of February, 1903, was the property of W. L. Corn and the other three belonged to his father and brother. Witness W. L. Corn had actual charge of a bunch of 223 beeves which he was feeding with cotton seed meal on said ranch. On the morning of the 5th of February, 1903, he missed four beeves out of said bunch; he knew them by their flesh marks and by their brands; he found the tracks of four beeves and three horses going out of the pasture through a gate and followed the tracks within three-quarters of a mile of defendant's place, near Fort Worth. He there found two of the stolen beeves in defendant's pasture near his house and two carcasses of beeves recently butchered hanging up in defendant's butcher stall. He drove away the two beeves from defendant's pasture, but did not see defendant. He went to Fort Worth and reported the matter to the sheriff and returned to defendant's house with the officers, who arrested the defendant.

The defendant, after being warned by the officers that any statement he might make would be evidence against him, stated that the beeves belonged to him and that he had paid for them. When asked for the hides, he refused to inform the officers where they were. The hides were afterwards found under a culvert in the public road and identified by W. L. Corn.

Biddle Williams testified for the State that he, Sam Hunter and the defendant had gone to W. L. Corn's pasture on the night of February 4, 1903, and had taken the cattle out and driven them over to defendant's place and butchered them.

A. B. Mann testified that he had been over to defendant's house on the morning of the 5th of February, 1903, and had asked him to butcher some old cows for him and that defendant had told him he might do so in a few days but that he had killed a cow either that morning or the

day before, and that when witness wanted to look at the meat defendant said he could not let him see it; that he had already taken it down, placed it in a wagon and covered it up.

Defendant's wife testified that Biddle Williams and Sam Hunter had approached defendant in Fort Worth, in her presence, and asked him to let them kill some cattle with his butchering outfit, and that defendant gave them permission to do so; that this was on the morning of the 4th of February, 1903. That on the night of that day defendant remained at home; that she was with him all that day and all that night, and that he could not have left her without her knowing it. She also denied that defendant ever claimed the beeves in question, and left the impression that Biddle Williams and Sam Hunter brought the beeves to defendant's place and butchered them. Wilcox and others testified to facts corroborating her statements.

The State placed several of the officers who were out at defendant's place at the time of his arrest on the stand who testified in rebuttal that defendant did say that the beeves were his property and that he had paid for them, etc.

*Carlock & Gillespie* and *Baskin, Dodge & Baskin,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of cattle theft, the punishment being four years confinement in the penitentiary. The statement of facts shows that appellant, Biddle Williams and Sam Hunter went to the pasture of W. L. Corn, about fifteen miles from where appellant lived, and stole four head of beef steers. The theft occurred at night, and the parties drove the cattle hurriedly to the home of appellant, reaching there about daylight. Two steers belonged to W. L. Corn's father, one to his brother, and the other to W. L. Corn. The proof shows that W. L. Corn at the time had the exclusive care, control and management of the pasture and the cattle. The conviction was had upon the second count of the indictment, charging possession and ownership of the pasture and all the cattle in W. L. Corn. Appellant insists that the court erred in the paragraph of the charge submitting this count to the jury, in omitting the word "actual" care, control and management. We do not think this was error. The evidence shows, as stated, that W. L. Corn had the exclusive care, control and management, and had the actual control also. The mere fact that the court failed to use the word "actual" as stated in the statute would not authorize a reversal. For a discussion of this matter see Alexander v. State, 24 Texas Crim. App., 126; Conner v. State, 24 Texas Crim. App., 245; Williams v. State, 26 Texas Crim. App., 131; Littleton v. State, 20 Texas Crim. App., 168.

By bill number 1 appellant insists that the court erred in permitting

Hammil Scott to testify that he, with other deputies, visited appellant's place on the day of appellant's arrest. State's counsel thereupon asked witness, "Did you find any cattle hides after that?" Witness answered yes. To this appellant objected, and asked that the jury be withdrawn, which was done. Thereupon the State offered to prove by Scott that he found two hides under a culvert on the public road, and they were taken to the jail and identified by Corn, prosecutor. Defendant's counsel objected "because he was going to say Biddle Williams told him where the hides were and is going to say what Biddle Williams did." The court remarked "I have already instructed witness, and instruct him again not to mention Biddle Williams' connection with it." The objections being overruled, witness answered, "That Biddle Williams was with him." The State thereupon asked witness, "Where did you find the hides?" Appellant objected defendant was not present and could not be bound by the act of a third party. Over objections the witness answered, "that they were about a mile and a half south of the hospital, out here south of town, in a culvert on the public road. I found these hides the following day after Bob Kennon was arrested, about 2 o'clock in the afternoon." Biddle Williams, a principal and cothief with appellant, also testified in the case, having turned State's evidence. This testimony was clearly admissible.

Bill number 2 complains that Mrs. Kennon (appellant's wife) having testified that at the time of defendant's arrest he had been in the business of butchering, had a butchering outfit, and butchered for other people—Hampton, Wilson—and had slaughtered for Mann and for George Tandy. Thereupon she was asked to what extent was it known in that community that he was butchering for the public? This was objected to, and objection sustained. The bill does not show what the witness would have answered, and hence the bill being defective in this respect, we can not say there was any error. Furthermore, even conceding the bill is not defective, we do not believe such testimony would have been material.

Bill number 3 shows appellant proposed to prove by Mrs. Kennon what was the feeling between appellant and prosecutor Corn and his father. This bill is also defective. It does not show what the witness would have testified. We can not refer to the statement of facts to aid a bill of exceptions.

Bill number 4 shows that Mrs. Kennon testified on direct examination in reference to the visit of Scott to the house of Kennon, and that at the time of the trouble between Will Corn and her husband she was in the kitchen door. Upon cross-examination she was asked about said interview, and testified, "that little Bill Corn stood up in his stirrups and says, 'We will give you recourse, Mr. Kennon;' says, 'I will just show you,' and made at him. Witness was asked, 'That is not what he said, is it? Said, 'I will show you?' A. Who said it? Q. Bob. He didn't say to little Bill Corn when he spoke up and said something,—he

didn't say, 'I will show you,' did he?'" To this unintelligible state-
ment, appellant objected on the ground that the defense had not ques-
tioned the witness about the matter; that the defense had asked witness
only one or two questions about this interview with Scott; and the State
was not entitled to the 'whole conversation by reason of defendant having
brought out part where the wife would be thereby testifying against her
husband. But the State can only cross upon the questions brought out
by the defense. The court overruled these objections. The objections
did not show that the testimony above detailed was not germane to a
legitimate cross-examination of the appellant's wife; and hence the bill
can not be considered for that reason.

Bill number 5 complains that the State was permitted to prove by Tom
Jackson that on the day of defendant's arrest he, with Akers, Scott,
Purbis and Roark, went to defendant's house; and conversations occurred
there with defendant; and that defendant did not mention that night,
anything about the meat in question belonging to Biddle Williams or
Sam Hunter, nor did he mention their names. Witness was then asked,
"Did either the defendant or his wife or Willie Wilcox mention Sam
Hunter or Biddle Williams?" Defendant objected to this as leading
and incompetent. Witness answered no. This bill is approved with the
explanation, "that defendant, his wife, and Willie Wilcox had all tes-
tified to facts which if true would naturally and almost necessarily have
caused them on the occasion referred to in this evidence to charge Biddle
Williams and Sam Hunter with the theft of the cattle." Under the ex-
planation of the court we think the testimony is admissible. The bill
does not show that appellant was not present participating in the whole
conversation, and certainly, as stated by the court, it would be a strong
circumstance to indicate a lack of truthfulness of his defense; that when
first accused of the theft of the cattle, neither did he nor anyone in his
presence make any claim that Biddle Williams and Sam Hunter had
stolen the cattle. Furthermore the objections are too general to be con-
sidered.

Bill number 6 complains that the sheriff, John T. Honea, was per-
mitted to testify to a statement made by appellant to him after he was
arrested. This bill shows appellant had been previously warned by
another officer, prior to making the confession to the sheriff, and a short
while before said statements were made to the sheriff. Bill number 7
complains that the State was permitted to prove by W. L. Corn the con-
dition of the cattle when found in possession of appellant, which he
identified as his cattle. He testified that they showed to have been
driven hard; they were drawn. The bill shows he had been engaged in
handling cattle, and was qualified to testify and answer the question.
The evidence was pertinent.

Bill number 8 complains that the court refused to excuse deputy sher-
iffs who were witnesses from the courtroom, on the ground that he

needed them to wait on the court. This is within the exercise of the sound discretion of the court; and we do not think the court abused it.

Bill number 9 complains that Willie Corn' was permitted to testify what the effect is upon fat cattle to drive them fast. Witness testified that it made their bowels loose, and they scour frequently. The bill is approved with the explanation, "that the witness had already testified that in tracking the steers lost from his pasture he found evidence on the road that the cattle he was tracking were scouring while traveling."

Bill No. 10 shows that appellant made a criminative statement to Hammil Scott, a deputy sheriff, after receiving the following warning: Scott told appellant that any statement he might make could be taken as evidence for or against him. Scott testified that he told appellant that any statement he made would be used as evidence against him on his trial, and did not say it would be used *for or against* him. This testimony was properly admitted; and the testimony of Corn raising the issue as to the proper warning being given was properly presented for the consideration of the jury in the court's charge. See Cortez v. State, decided June 15, 1904, for a discussion of this matter.

Bills 11 and 12 complain that Willie Wilcox was cross-examined by the State and the predicate laid for his contradiction upon an immaterial issue in this case. Under the explanation of the court to the bills we think this testimony was admissible—said Wilcox being a material witness for the defense, and the predicate for the impeachment being properly laid upon a material issue in the case.

Appellant insists that the evidence is insufficient to support the conviction; or rather to corroborate the accomplice. We are inclined to believe that the evidence would be sufficient without the testimony of the accomplice; but certainly with the testimony of the accomplice is amply sufficient. The evidence shows a bold and deliberate taking by appellant and his two confederates of four head of beef cattle from the pasture of prosecuting witness. There is no semblance of defense offered by the testimony of appellant. The judgment is affirmed.

*Affirmed.*