## Delmar Funk v. The State.

### No. 5001.   Decided January 8, 1919.

**1.—Murder—Jurisdiction—Soldier.**

Where defendant was charged with murder in May, 1917, and at his trial during the same year interposed a plea to the jurisdiction of the District Court of Bexar County, on the ground that he was a soldier in the United States Army at the time of the alleged offense and at the time of the trial, the same was correctly overruled.

**2.—Same—Rule Stated—United States Soldier—Statutes Construed—Jurisdiction.**

A soldier of the United States who murders a citizen of a State offends against both the military and State laws and is amenable to both, and where in the instant case the military authorities had not asserted any prior right to try the defendant by court-martial, or urged any objection, the choice of the court by which he is to be tried was not given to the defendant, and the court correctly overruled his plea to the jurisdiction of the State court.

**3.—Same—Removal from State Court—United States Court.**

Where defendant was accused of murdering a citizen of this State who was pursuing a civil occupation, and the defendant was not engaged in an enterprise connected with or incident to his duty as a soldier, etc., there was no error in the court in refusing to grant his petition for removal of his case from the State court to the District Court of the United States.

**4.—Same—Special Venire—Practice in District Court—Rule Stated.**

When a special venire has been regularly issued and the veniremen summoned to appear, and the accused served with a copy of the sheriff's return showing the service, and there was no motion to quash, the court is not authorized to discharge the veniremen without just cause and without the consent of the accused and order a second venire. Following Bates v. State, 19 Texas, 122, and other cases.

**5.—Same—Evidence—Hearsay—Harmless Error.**

Where, upon trial of murder, the court admitted in evidence hearsay testimony, the same was harmless error as the same testimony was given by the defendant.

**6.—Same—Evidence—Written Statement—Accomplice—Harmless Error.**

While the defendant should have been accorded the privilege of inspecting the previous written statements of an alleged accomplice, yet where he had the benefit of them on cross-examination of the witness for the purpose claimed, the error was harmless.

**7.—Same—Evidence—Accomplice — Admission — Conspirator — Fruits of Crime.**

Upon trial of murder, there' was no error to admit testimony by the officer that he obtained from two participants in the homicide certain information, and acting thereon obtained three pistols and cartridges, which were identified on the trial as having been used in the homicide. Following Henderson v. State, 50 Texas Crim. Rep., 266, and other cases.

**8.—Same—Evidence—Absent Witnesses.**

Upon trial of murder, it was error to admit testimony that certain witnesses had disappeared and that search had been made for them and a subpoena issued for them with the return thereon, there being no facts to show that defendant had been instrumental in causing their disappearance or preventing their attendance. Following Askew v. State, 59 Texas Crim. Rep., 152, 127 S. W. Rep., 1037, and other cases.

**9.—Same—Principals—Charge of Court—Alibi—Circumstantial Evidence.**

Where, upon trial of murder, the court delivered a correct charge on the law of principals as applied to the facts, and also a charge on the law of alibi and circumstantial evidence, there was no reversible error, although the charge on alibi was not required.

**10.—Same—Requested Charge—Conspiracy.**

Where the requested charge ignored the theory of conspiracy it was correctly refused.

Appeal from the District Court of Bexar. Tried below before the Hon. W. S. Anderson.

Appeal from a conviction of murder; penalty, fifty years imprisonment in the penitentiary.

The opinion states the case.

*W. W. Walling* and *Chambers & Watson,* for appellant.—On question of jurisdiction: Coleman v. State of Tennessee, 97 U. S., 510; State of Tennessee v. Hibdom, 23 Fed. Rep., 795; Ex parte King, 246 Fed. Rep., 868.

On question of special venire: Hall v. State, 28 Texas Crim. App., 146; Sharpe v. State, 17 id., 486; Harrison v. State, 3 id., 558.

On question of hearsay evidence: Cox v. State, 76 Texas Crim. Rep., 326, 174 S. W. Rep., 1067; Reed v. State, 76 Texas Crim. Rep., 335, 174 S. W. Rep., 1065.

On question of confession by co-conspirators: Williams v. State, 199 S. W. Rep., 296.

On question of submitting subpoena of absent witnesses, etc.: Anderson v. State, 74 Texas Crim. Rep., 621, 170 S. W. Rep., 142, and cases cited in the opinion.

On question of court's charge on principals: Dawson v. State, 38 Texas Crim. Rep., 50; Jones v. State, 57 id., 144; Clark v. State, 60 id., 173; LaFell v. State, 69 Texas Crim. Rep., 307, 153 S. W. Rep., 884.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of jurisdiction: Grafton v. United States, 206 U. S., 333, and cases cited in the opinion.

On question of special venire: Ross v. State, 40 Texas Crim. Rep., 349; Conger v. State, 63 id., 312; Hernandez v. State, 60 id., 30; Ortiz v. State, 68 Texas Crim. Rep., 524, 151 S. W. Rep., 1056.

On question of co-conspirators in possession of fruits of crime: Pierson v. State, 18 Texas Crim. App., 524; Henderson v. State, 50 Texas Crim. Rep., 266; Eggleston v. State, 59 id., 542; Bowen v. State, 60 id., 595.

MORROW, JUDGE.—Appellant is under conviction for murder charged to have been committed in May, 1917, and at his trial the same year he interposed a plea of jurisdiction of the District Court of the State of Texas on the ground that he, being a soldier in the United States army at the time of the alleged offense and at the time of the trial, was not amenable to the State courts. He also filed a motion to transfer the cause to the United States District Court.

Appellant relies upon the provisions of chapter 418, Acts of the Sixty-fourth Congress, First Special Session, U. S. Statutes at Large, volume 39, page 664. Prior to the passage of the Act mentioned the jurisdiction of the military tribunals over offenses committed by soldiers of the United States army was not exclusive. Coleman v. Tenn., 97 U. S. Sup. Rep., 509, 24 L. Ed., 1118; Ex parte Mason, 105 U. S., 696, 26 L. Ed., 1213; Willoughby on the Constitution, vol. 2, pp. 1204-7, secs. 1010-11; note Hughes v. Commonwealth, 31 L. R. A. (N. S.), 710; Franklin v. United States, 216 U. S., 559, 54 L. Ed., 615.

Article 92 of the Articles of War embraced in the Act of Congress mentioned is as follows: "Any person subject to military law who com-

mits a murder or rape shall suffer death or imprisonment for life as the court martial may direct, but no person shall be tried by court martial for murder or rape committed within the geographical limits of the States of the Union and the District of Columbia in the time of peace."

The language of the old statute construed in Coleman v. Tenn., supra, contains the following language: "In time of war . . . murder shall be punishable by sentence of a general court martial when committed by persons in the military service of the United States."

We are aware of no judicial construction of the recent Act of Congress touching the question raised, and in our judgment the language used in the new statute is not indicative of an intention upon the part of the Congress to change the rule applied by the courts to the former statute. A soldier of the United States who murders a citizen of a State offends against both the military and the State laws and is amenable to both. Grafton v. United States, 206 U. S., 333, 51 L. Ed., 1084, 11 Ann. Cases, 640; Franklin v. United States, 216 U. S., 559, 54 L. Ed., 615. It has been held, however, that under the recent Act of Congress, chapter 418, supra, the military authorities have the prior right and that upon their interposition the jurisdiction of the military courts will be given preference over that of the State courts touching offenses committed by soldiers of the United States army in the time of war. Ex parte King, 246 Fed. Rep., 868.

In the instant case the military authorities have not asserted any prior right to try the appellant by court martial, nor, so far as the record shows, urged any objection to his trial and punishment, if guilty, by the State courts. "The choice of the tribunal by which he is to be tried has not been given to the offender." Ex parte Mason, 105 U. S., 696; Willoughby on the Constitution, vol. 2, p. 204.

We are therefore of the opinion that the trial court committed no error in refusing to sustain the appellant's plea to jurisdiction of the State courts.

His motion to remove to the District Court of the United States is based upon article 117 of the Act of Congress mentioned, which article provides for the transfer of causes to the Federal courts under certain circumstances, and contains the following language:

"When any civil suit or criminal prosecution is commenced in any court of a State against any officer, soldier, or other person in the military service of the United States on account of any act done under color of his office or status, or in respect to which he claims any right, title, or authority under any law of the United States respecting the military forces thereof, or under the law of war, such suit or prosecution may at any time before the trial or final hearing thereof be removed for trial into the District Court of the United States in the district where the same is pending in the manner prescribed in section 33 of the Act entitled 'An Act to codify, revise and amend the laws relating to the judiciary,' approved March 3rd, 1911, and the cause shall there-

upon be entered on the docket of said District Court and shall proceed therein as if the cause had been originally commenced in said District Court as shall have been had therein in said State court prior to its removal, and said District Court shall have full power to hear and determine said cause."

In this prosecution the appellant is accused of murdering a citizen of the State, while the deceased was pursuing his civil avocation and the appellant was engaged in an enterprise in nowise connected with or incident to his duty as a soldier. His connection with the homicide is denied by him and there is no contention that the prosecution was commenced "on account of any act done under color of his office or status"; nor was it on act "in respect to which he claims any right, title or authority under any law of the United States respecting the military forces thereof, or under the law of war." If he committed the act charged, it is not justified by any law. We are therefore of opinion that the trial court committed no error in refusing to grant his petition for removal.

This cause was originally set for trial November 12th and a special venire of fifty men regularly ordered for appearance on that day. Both the State and appellant announced ready for trial, and thereafter it developed that only thirty-five of the special venire had been served with summons to appear. The appellant thereupon made a verbal objection to proceeding with the selection of the jury until at least thirty-six men were present. The court thereupon, as stated in the bill of exceptions, "of his own motion passed said case until the 19th day of November, dismissed the special venire of fifty men without the consent of defendant and when no motion to quash had been filed, and ordered another special venire." When the case was called on the 19th of November appellant objected to proceeding to trial, insisting that the second special venire was illegal, contending that the first venire having been unlawfully dismissed, that the court was without authority to order a second; and the motion to quash having been overruled the question is here for review.

It has been held that when a special venire, which is a writ issued by order of court, has been regularly issued and the veniremen summoned to appear as required by the writ and the accused served with a copy of the sheriff's return showing the service, that the court is not authorized to discharge the veniremen without just cause, and without the consent of the accused, and to order a second venire. Bates v. State, 19 Texas, 123; Sharp v. State, 17 Texas Crim. App., 486; Hall v. State, 28 Texas Crim. App., 146.

In the Bates case a venire of thirty-six jurors was summoned in attendance upon the court. Twelve of them, however, selected were upon the jury in a civil case and were not ready to return their verdict at the time the case against Bates was called. He objected to the selection of the jury in his case in the absence of these twelve. The court excused them; the defendant excepted. The court reversed the case, stating in

substance that while the valuable right to have a special venire might be defeated in whole or in part by the non-attendance of jurors or by their dismissal for sickness, disqualification or other good cause, that the trial court would have no right to suffer twelve of the special venire to become jurors in the trial of civil case, and upon that ground to discharge them from the venire. The court remarked: "For if twelve of the list may be thus disposed of by the court, so may the whole list be exhausted, and the prisoner's right would be thereby defeated; and not by any casualty over which the court had no control, but by the gratuitous action of the court itself."

In Hall v. State, 28 Texas Crim. App., 147, a special venire of sixty men was ordered. By inadvertence fifty-nine only were included in the venire list, and fifty-seven were summoned. The action of the parties and views of the court is disclosed in the following quotation from the opinion, reversing the judgment:

"Defendant made a motion to quash the service of the special venire which had been made upon him. He did not make any motion to quash the special venire itself. But when his motion to quash the service was submitted, it was discovered that defendant had applied on verbal motion for a special venire of sixty men, but that by inadvertence only fifty-nine names had been drawn or placed upon the list attached to the writ. The court asked the defendant if he waived his right to a venire of sixty men, or if he desired to make an application in writing, under oath, for a special venire as provided by article 607 of the Code of Procedure. Defendant replied that he did not waive any of his rights, but that he did not wish to make oath in writing for another special venire; whereupon the district attorney made his oral motion as provided by article 606, and upon his motion a new special venire for sixty men was ordered. When the case was called for trial the defendant objected to this new special venire, because he had never moved to quash or vacate the original special venire; that in fact it had never been quashed or vacated, there being no order of the court to that effect; that the order for, and the summoning of, the second special venire was unauthorized and void, and that he should not be compelled to select a jury therefrom."

It was held in Hall's case, and there are a number of others to the same effect, that the fact that all of the veniremen were not summoned, or that the number attending was less than thirty-six, would not require the court to quash the venire even though the appellant made a motion therefor. Taylor v. State, 14 Texas Crim. App., 340; Martin v. State, 38 Texas Crim. Rep., 462; Williams v. State, 60 Texas Crim. Rep., 453; Johnson v. State, 63 Texas Crim. Rep., 50; Oliver v. State, 70 Texas Crim. Rep., 140; Keets v. State, 76 Texas Crim. Rep., 384, 175 S. W. Rep., 149.

The record discloses no obstacle in the instant case to the court's requiring appellant at the time he announced ready for trial, to proceed with the selection of the jury from those present. It affirmatively ap-

pears from the bill of exceptions, which is not qualified or explained by the trial judge, that the appellant made no motion to quash the first venire, and it further affirmatively appears from the bill that the court discharged the veniremen present in response to the writ without the appellant's consent, and without good cause.

Thus presented, the question before us for decision is, could the court legally dismiss the thirty-five veniremen who appeared under the first venire when both the appellant and the State were ready for trial, when no motion was made to quash the venire, when the appellant did not consent to its dismissal, when there appeared no good cause to discharge them, when conditions were such as to authorize the court to require the appellant to proceed to select the jury from the veniremen present. We think under the authorities mentioned, and in accord with the sound reasons there set forth we should hold that the court was not authorized.

The development of the case discloses that the State's theory is to the fact that the appellant and three other soldiers formed a conspiracy to employ a chauffeur to take them out in his car, to murder him, procure his car, desert the army and use the car in fleeing to Mexico; that pursuant to this conspiracy they did employ Burns, the deceased, and murdered him. Briefly summarized, the facts show that on the evening of the homicide, after dark, the appellant and his three companions arranged with deceased to take them, for hire, in his automobile to a point near San Antonio. That after traveling some twelve or thirteen miles the automobile was stopped and a conversation had between appellant and some Mexicans, and that the automobile was then turned around and driven in the direction of San Antonio, along the same road that had previously been gone over, a distance of about three miles, and that the car was again stopped and the homicide took place. The point at which his body was discovered was about one hundred yards distant from a house occupied by a Mexican, who testified as a witness. The body of deceased was found the following morning, having two or three wounds from pistol shots upon it and a number of wounds about the head, crushing the skull. It was found in a field some few yards from the road mentioned and there was evidence that around the automobile a struggle had taken place. Blood had been spilled on the automobile and in it and on the ground near where it stood. The automobile was found the following day, abandoned.

Appellant's theory was that he was not a party to, nor possessed of any knowledge of, the conspiracy or of the intent of his companions to injure the deceased or take his property. That he had in his room at the military camp a suitcase belonging to some of his companions which they desired to obtain and that he consented to accompany them in the car with deceased for the purpose of obtaining this suitcase, and that while en route his companions suggested that they desired to go somewhat out of the way on the road where the homicide took place for the purpose of getting some girls and bringing them back to the city; that appellant consented to this diversion, and to oblige his companions he

got out of the car at the first stop mentioned and made inquiry of Mexicans with reference to the locality of the place at which the girls were claimed to reside by his companions; that the Mexicans with whom he talked were unable to speak English but by their gestures indicated that the parties for whom he was looking lived further back on the road and that when they reached the point where the homicide took place, at the suggestion of his companions he had gone to the house of the Mexican who lived about one hundred yards from where the homicide took place, on the theory suggested by his companions that the girls for whom they were searching would be found there. That while on this mission the difficulty occurred and was over when he returned; that he noted the firing of the shots, the excited language of his companions and their disturbed condition upon his return, and upon inquiry of them as to the cause was ordered at the point of a pistol to enter the car and drive to town, which he did, stopping at the house in San Antonio at which there lived a woman called Mrs. Dufree, with whom, the evidence indicates, he was on terms of intimacy.

The State introduced the evidence of a Mexican with whom appellant conversed at the first stop of the automobile mentioned and the witness, who was used by the State, claimed to be unable to understand English and to have known what was said by appellant upon the occasion only by information he received from other Mexicans who were in his company. The details of what this witness claimed appellant said were not admissible, coming from him because his knowledge of what was said by the appellant was hearsay. Its admission, however, we think, was harmless for the reason that his statement as to what took place coincides with the testimony of the appellant upon the same subject.

Appellant and one Creighton were arrested some two weeks after the homicide and charged therewith. The two others who were in the party fled to Mexico and were brought back under arrest some four months later. On the trial Creighton testified, under promise of immunity to the extent of fixing his punishment at fifteen years confinement in the penitentiary, and in his testimony inculpated the appellant as a principal actor in the homicide, the leader and originator of the conspiracy. It was shown that he had, during his confinement, made a number of statements concerning his connection with the homicide, such statements made to officers of the court, some of them in writing and verified by his affidavit, and that he had not inculpated appellant in these statements, but, on the contrary, had exculpated him, and that he consented to give the statement inculpating him only on the day that he gave his testimony at the trial, and under promise of the immunity mentioned.

We think appellant should have been accorded the privilege of inspecting the previous written statements of the alleged accomplice. Wharton's Crim. Ev., sec. 564, vol. 2. They bore on the truth of the evidence given by the witness on the trial. From the cross-examination it is disclosed that appellant had the benefit of them for the purpose of

affecting the credibility of accomplice testimony, and the bill not dis-
closing that the statements were desired for any other purpose, we think
the bill shows no harmful error.

It was proved by the sheriff that on his return from Mexico with
the two participants in the homicide who fled, that he obtained from
them some information, and that acting thereon he went with them
and under their direction to a certain culvert and obtained three pistols
and cartridges, which were identified at the trial by the accomplice
Creighton as those used in the homicide, and in his testimony he con-
nected appellant with them. The admissibility of this testimony of
the sheriff is challenged on the ground that it was an act of a co-con-
spirator, or declaration by him subsequent to the completion of the
conspiracy. It appearing that on the information gotten from the ac-
complice, the weapons identified by the other evidence as used in the
homicide, were found, that the case is within a well defined exception
to the rule rejecting as evidence the declarations and acts of a co-
conspirator made after the completion of the offense. The action of
the trial judge in admitting the testimony is, we think, sustained by
various decisions of this court, among them Henderson v. State, 50 Texas
Crim. Rep., 66; Kennon v. State, 46 Texas Crim. Rep., 359; Pace v.
State, 20 S. W. Rep., 762; Pierson v. State, 18 Texas Crim. App., 524.

The sheriff testified that prior to the arrest of appellant and Creigh-
ton, he talked to a woman named Mrs. Cook, and that he talked with
another woman whom he described, whose name he did not know, but
whom he said was registered at a certain hotel in the name of Mrs. Funk;
that both of these women were witnesses in the case but that he had
been unable to find them though he had made diligent search and in-
quiry for them. In connection with his testimony, as shown by the
bill, a subpoena for Mrs. Cook and Mrs. Durfee, together with the
sheriff's return thereon stating that they could not be found, was in-
troduced in evidence.

We are of opinion that the fact that these two women had disappeared
and that search had been made for them, and a subpoena issued for
them with the return mentioned, was not admissible against the de-
fendant, there being no facts introduced relevant to show that he had
been instrumental in causing their disappearance or preventing their
attendance. He had been confined in jail from the time of his arrest.
The objection made by the appellant to the introduction of this testi-
mony is sustained, we think, by the case of Askew v. State, 59 Texas
Crim. Rep., 152, 127 S. W. Rep., 1037; Day v. State, 62 Texas Crim.
Rep., 448, 138 S. W. Rep., 132; Barnes v. State, 61 Texas Crim. Rep.,
37, 133 S. W. Rep., 892; Mains v. State, 23 Texas Crim. App., 576, as
well as other cases listed in Branch's Ann. P. C., sec. 155.

Several criticisms are addressed to the court's charge on the law of
principals, particularly to the following language: "If so, then the law
is that all are alike guilty, provided the offense was actually committed
during the existence and execution of the common design and intent of

all, whether in point of fact all were actually, bodily present on the ground when the offense was actually committed or not."

He also charged on the law of alibi and circumstantial evidence.

Appellant insists that the authorities cited by Mr. Branch in his Ann. P. C., section 685, condemn the charge given under the circumstances as erroneous, laying stress upon the fact that such a charge was not applicable to a case in which the State relies upon circumstantial evidence, or in which the defense of alibi arises.

A discussion in detail of the attack upon the charge we deem unnecessary. Suffice it to say that we do not regard it subject to any of the criticisms specifically addressed to it in the exceptions filed, nor is it, in our opinion, obnoxious to the legal principles governing the law of principals where there is evidence of a conspiracy to commit the offense. We fail to discern in what particular the charge of the court is at variance with the charges on the subject, approved in Grimsinger v. State, 44 Texas Crim. Rep., 1; Renner v. State, 43 Texas Crim. Rep., 349, and other cases cited in Branch's Ann. P. C., sec. 686. The court was not required to charge on the law of circumstantial evidence. The witness Creighton gave direct testimony that appellant was a conspirator in the plan to murder Burns and that he participated in the homicide. The court also charged on alibi, and under the facts, we think, this was an instruction which was not required of him. The defense of alibi arises when there is evidence that appellant is at a point where he could not have been guilty of participating in the offense. Wharton's Crim. Law, sec. 380, vol. 1, p. 487. The theory and testimony of the State was that appellant actually had part in killing deceased. His theory and testimony admits that he was with the persons who murdered Burns at the time the car stopped, that he went to the scene of the homicide with them and returned with them, but claims that at the moment the blows were struck and the shots fired he was not at the immediate place of the killing and had no hand in it. If appellant did not enter into a conspiracy to kill the deceased and did not take part in the homicide, or did not, knowing the unlawful purpose of his companions, aid or encourage them in the commission of the act, he would not have been guilty of the crime though he was present. If, however, he was a party to such a conspiracy, or knowing the unlawful purpose of his companions, aided or encouraged them in their unlawful act, he might be guilty though he was not at the automobile at the immediate time the blows were struck or the shots fired. In other words, to instruct the jury that the mere fact that appellant had gotten out of the automobile and gone to the house a hundred yards away, as he claims to have done immediately before the killing, would require his acquittal on the theory of an alibi, would be to ignore the rules of law which apply to cases of principals and conspirators in committing a homicide and give too narrow a construction to the term "present" used in the statute. See Branch's Ann. P. C., sec. 680;

Wharton's Cr. Ev., vol. 1, p. 676; Cain v. State 42 Texas Crim. Rep., 210.

It would have been proper for the court to have instructed the jury more specifically on appellant's theory as to the facts, but the special charge requested by the appellant upon the subject was inaccurate in that it ignored the theory arising from the evidence that he had conspired with the others to kill Burns.

We have considered the assignments of error which we have not discussed but deem it unnecessary to review them.

We find no reversible errors in the record save those we have pointed out, and because of those we have mentioned, the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*