JOHN HENRY v. THE STATE.

No. 8812.   Delivered April 29, 1925.

**1.—Murder—Common Law Wife—Not Established.**

Where appellant claimed that a witness for the State was his common-law wife, and for that reason incompetent to give evidence against him, and the evidence showed that appellant and witness had lived and cohabited together for several years, but that they had never held themselves out as married, such a proof did not establish a common-law marriage and the witness was properly ·permitted to testify against him.   Following Mann v. State, 44 Texas Rep. 642, and Sims v. State, 30 Tex. Crim. App. 605.

**2.—Same—Evidence—Bolstering up Witness—Error.**

Where the main prosecuting witness had made several contradictory statements of a very material character. prior to the trial and on her examination when these facts were developed by her, the court properly retired the jury, and himself examined her touching her reasons for such contradictions, and after the jury had returned and her testimony completed, it was error for the court to permit a deputy sheriff to testify as to the conversation had between the court and this witness, during their retirement.   Such testimony was hearsay, extremely damaging to appellant, and for this error the conviction must be set aside.

**3.—Same—Evidence—Declarations of Co-defendant—Inadmissible When.**

It was error to admit the declarations of the witness Show, the supposed co-defendant, or co-conspirator of appellant made by him while in jail, and after, the commission of the crime.   The general rule is that proof of the acts or declarations of a co-conspirator done or made in the absence of the defendant, on trial, after the commission of the offense, and after the conspiracy is terminated. is not admissible against such defendant. See cases collated under Sec. 695 Branch's Ann. Tex. P. C. Following Couch v. State, 58 Tex. C. R. 505 and many other cases cited.

**4.—Same—Continued.**

It is well established that after a conspiracy ·is ended. it may be shown by proper evidence that a co-conspirator or co-defendant was found in possession of the fruits of the crime, or the weapon with which it was committed, but it is not permissible to show this by testimony of others as to the acts or declarations of the co-conspirator or codefendant.

Appeal from the District Court of Bowie County.   Tried below before the Hon. Hugh Carney, Judge.

Appeal from a conviction of murder; penalty, assessed at death. The opinion states the case.

*Richard G. Waters* and *W. W. Arnold,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, Judge.—Defendant is under conviction for the murder of Asbury Whitten, with the punishment assessed at death.

The brother of deceased owned a store in which deceased worked and where he slept. He was last seen alive about nine o'clock at night. The next morning his body was found at the back door of the store with the head almost completely severed. Two cuts were in the head, apparently having been made with an ax. Other facts sufficiently appear in connection with the questions of law discussed.

Defendant complained because Doll Washington was permitted to testify against him, it being urged that the testimony showed she was defendant's common-law wife and as such was prohibited from giving evidence by Art. 794, C. C. P. The bill is qualified by a statement of the learned trial judge that while the witness testified as shown by the bill as to her relations with defendant, that she also swore they "had lived and slept together for a number of years, that they were not married, and had never held themselves out as married. Her testimony showed only that she and defendant had been living together in adultery." The bill having been accepted with this qualification is binding on us. It shows no error. Mann v. State, 44 Texas Rep. 642; Sims v. State, 30 Texas Crim. App. 605.

The matter complained of in Bill No. 3 cannot be well understood without a statement of what preceded. Doll Washington and defendant had been living together for five or six years. She was placed on the stand by the State and testified that on the night of the homicide defendant went to bed soon after supper, but got up in about an hour, put on his clothes and left the house; that he declined to tell her where he was going, only saying he had some business to attend to; that when he came back. he told her he had helped to kill deceased; that he did it to get some money; that Houston Shaw got the money while defendant killed deceased with an ax; that he had buried the money in a hay stack and thrown the ax in an old well. On cross-examination she admitted that when first brought before the grand jury she swore defendant did not leave the house the night of the murder. Upon being asked about changing her testimony the second time she was before the grand jury witness said, "They got after me, and told me they would kill me, or keep me in jail a year." It also developed that the attorney's for defendant, in company with an officer, talked to the witness in jail the night before the trial. She inquired if they were defendant's attorneys. They declined to tell her, but told her they only wanted the truth of the matter. She admitted while testifying in the case that she told the attorneys in the presence of the officer that defendant had not left the house the night deceased

was killed, and that what she told to the contrary was a lie, and said she told the lie because "those people scared me to death." The next morning, however, she asserted that what she told the attorneys the night before was a lie. She swore no officers had threatened her but that some prisoner in jail had made the threats. At this point the learned trial judge had the jury retired, and in their absence held some converse with the witness which will appear later. When the jury was brought in she again repeated the confessions claimed to have been made to her by defendant. The next day the State, over objection, was permitted to prove by a deputy sheriff that he was present the day before and heard the judge in the jury's absence tell the witness (Doll Washington) the following: "All we wanted was for her to tell the truth, the whole truth and nothing but the truth, and wouldn't anybody hurt her for telling the truth, and that was all he wanted; he told her she would be protected; he said this was a court of justice, regardless of whoever it was in favor of or against; and he said for her to go ahead and tell the truth and she would be protected, and insisted for her to tell the truth regardless of what it was, and assured her that she would be protected and no harm done to her, and she said that she would tell the truth; and when the jury came back she told the same story I first heard her tell." The evidence of the officer stating what the court had told the witness in the jury's absence was objected to as hearsay, and that the purpose and effect of it was to support in an improper way the testimony of Doll Washington against defendant. The matter arose in a most unusual manner. There was no objection to what the court said to the witness in the jury's absence, and indeed it seems none could have been reasonably urged. The court doubtless realized that this defendant's life depended on the testimony of this particular witness, for upon her alone the State depended to connect him with the killing. The court though it proper to retire the jury while he admonished or advised the witness, and we are in entire accord with him that far, but we are unable to understand on what principle he later let a witness by hearsay testimony advise the jury of the very matters he had withheld from them. In view of the many contradictions and conflicts in the testimony of Doll Washington (all of which have not been mentioned) the jury may have used the testimony complained of to defendant's injury. It could have been appropriated to support her, on the theory that after being admonished by the court to speak the truth and she would receive protection she had re-asserted the criminative facts against accused, and therefore she must have spoken truly in view of the court's assurance. This is to be understood as having application only under the

peculiar circumstances of this particular case, having reference to the manner in which the question entered the record.

Complaint is made of the admission of certain evidence through the witness Tom Lennox. He testified that he talked to Houston Shaw and Dollie Washington while they were in jail. He was asked if any one made a declaration to him, but was not permitted to answer this question. However, he did testify over objection that he, together with others, took Shaw out of jail and went with him to a certain point where they left their cars, and that Shaw carried them to the *place where he (Shaw) said the money was buried;* that they found the money in a sack inside a tin can. Witness was shown and identified the sack. The testimony was objected to on the ground that neither the acts nor declarations of Shaw were admissible against defendant. The latter was not present, and is not shown to have had any knowledge of Shaw's statements or acts. It will be recalled that Doll Washington claimed that defendant had told her the money was buried in a hay-stack. If any money was ever found in a hay-stack, the record fails to show it. The money found by Lennox on the trip with Shaw was at an entirely different place than that described by defendant, and was not discovered as a result of any statement made by the latter, hence it does not come within the provision of that part of Article 810, C. C. P., admitting confessions when in connection therewith statements are made which are found to be true and which conduce to establish the guilt of the party making them. If the property found came out of the Whitten store, the transaction testified about by Lennox would be admissible against Shaw if he were on trial, but was it admissible under the circumstances against defendant? We think not. If it be conceded that defendant and Shaw were co-conspirators in the murder to effect burglary or theft, the conspiracy had terminated. The general rule is that proof of the acts or declarations of a co-conspirator done or made in the absence of the defendant on trial after the commission of the offense, and after the conspiracy is terminated, is not admissible against such defendant. (See cases collated under Sec. 695, p. 354, Branch's Ann. Tex. P. C. ). It is patent from the record that the trip resulting in finding the buried money was brought about by information given by Shaw. The latter pointed out the place where "he said the money was buried." Couch v. State, 58 Texas Crim. Rep. 505,———S. W.———; Overstreet v. State, 67 Texas Crim. Rep. 565,———S. W.———; are direct authority against the admission of the testimony complained of. They are approved in Garcia v. State, 88 Texas Crim. Rep. 605, 228 S. W. Rep. 938. The case of Funk v. State, 84 Texas Crim. Rep. 402, 208 S. W. Rep. 509, as explained in Howard v. State,, 92 Texas Crim.

Rep. 221, 242 S. W. Rep. 739, is not in conflict with this holding. It is well established that after a conspiracy is ended it may be shown by proper evidence that a co-conspirator, or co-defendant, was found in possession of the fruits of the crime, or the weapon with which it was committed but it is not permissible to show this by testimony of others as to the acts or declarations of the co-conspirator or co-defendant. The principle is illustrated by many cases collated under Sec. 695, paragraph 3, Branch's Ann. Tex. P. C.

The facts are unsatisfactory to support a verdict carrying the extreme penalty. None of the stolen money was found in defendant's possession; none was found buried under any hay-stack where he is said to have placed it; no ax was found in an old well where he is said to have thrown it. The State's case hinges almost wholly upon the contradictory statements of defendant's paramour.

For the reasons heretofore given, the judgment is reversed and the cause remanded.

*Reversed and remanded.*